623 A.2d 1355

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAMES
A. NEWMAN, JR., DEFENDANT–APPELLANT.

Argued October 27, 1992—Decided May 12, 1993.

*Claudia Van Wyk,* Deputy Public Defender II, argued the cause for appellant (*Zulima V. Farber,* Public Defender, attorney).

*Henry L. Warner,* Assistant Prosecutor, argued the cause for respondent (*Jeffrey S. Blitz,* Atlantic County Prosecutor, attorney).

*Teresa A. Blair,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the validity of a sentence of restitution imposed to recover "drug buy money" that defendant had received from an undercover investigator. We also address the adequacy of the inquiry conducted by the sentencing court in setting the amount of restitution and in determining defendant's ability to pay.

I

In February 1991, an Atlantic County Grand Jury returned a seventeen-count indictment against defendant, charging him with offenses stemming from cocaine sales to undercover investigators of the Atlantic County Prosecutor's Office on September 7, 13, and 18, and October 9, 1990. An officer arrested defendant during the October 9 transaction before any money had been exchanged.

Defendant pleaded guilty to one count of the indictment, alleging distribution on September 18 of more than one-half ounce but less than five ounces of cocaine, a second-degree offense. In return, the prosecutor agreed to dismiss the remaining counts. The agreement contemplated that the prosecutor would recommend "ten years prison, no minimum eligibility,

[and] restitution." Defendant acknowledged on the plea form that he "may be ordered to pay restitution."

At the plea hearing, the court acknowledged the recommended sentence and informed defendant of the maximum penalties to which he could be subjected, including a $100,000 fine. Defendant admitted that he had distributed cocaine on September 18 to an undercover investigator in return for money. He did not refer to any of the other transactions. Neither defendant nor the prosecutor disclosed the amount of money defendant had received from the sales of cocaine. Satisfied that defendant's recitation provided an adequate factual basis, the court accepted the plea.

At sentencing, the prosecutor emphasized that defendant had been motivated by profit, noting that "because restitution is one aspect of the plea agreement and just adding up the figures, Judge, the restitution comes to $5,525.00. That's undercover buy money that was given to Mr. Newman for the purchase of the quantities—rather large quantities of cocaine in question." The prosecutor did not itemize the components of the proposed amount of restitution, but a breakdown appeared in the presentence investigation report: on September 18, defendant sold 53.3 grams of cocaine and received $2,800; on September 7, he sold 13.8 grams for $1,125; and on September 13, he sold 28.5 grams for $1,600. Defense counsel had reviewed the report, and had not contested its description of the transactions. Nor did he object when the court imposed the sentence and included an order for restitution of $5,525.00. The court also imposed "[a] $30.00 VCCB penalty, * * * a DEDR penalty of $2,000.00, a forensic laboratory fee [of] $50.00, [and] a driver's license suspension of six months."

Defendant appealed on the excessive-sentence calendar, arguing primarily that the court had failed to evaluate properly his ability to pay the restitution. The Appellate Division affirmed the sentence. Defendant petitioned for certification, arguing that restitution of drug-buy money is an unavailable sentencing

alternative because the County Prosecutor's Office was not a "victim" who had suffered a "loss," and that the buy money constituted an unrecoverable cost of prosecution. Defendant also claimed that the court should not have determined prospectively his ability to pay because the restitution had been imposed in conjunction with a lengthy prison term. Finally, defendant asserted that the court had failed to evaluate adequately his ability to pay. We granted certification, 130 *N.J.* 6, 611 *A.*2d 646 (1992).

## II

### A.

A sentencing court may impose only those sentences authorized by statute. *N.J.S.A.* 2C:43-2a. When sentencing a defendant to a term of imprisonment, a court may also require the payment of a fine or restitution. *N.J.S.A.* 2C:43-2b(4). The court's discretion, however, is limited by *N.J.S.A.* 2C:44-2a, which at the time of defendant's sentencing [1] provided:

> The court may sentence a defendant to pay a fine or make restitution, or both, in addition to a sentence of imprisonment or probation if: (1) the defendant has derived a pecuniary gain from the offense; or (2) the court is of opinion [sic] that a fine or restitution, or both, is specially adapted to deterrence of the type of offense involved or to the correction of the offender.

The statute does not differentiate between fines and restitution, nor does it define those situations in which one or the other would be appropriate. An understanding of the historical distinction between fines and restitution will assist in clarifying the statute's intended application.

Restitution generally is understood to be a form of sanction by which a wrongdoer would compensate the victim for any losses caused by the wrongdoer's conduct. Richard E. Laster,

---

[1] Subsequent to defendant's sentencing, the Legislature amended *N.J.S.A.* 2C:44-2 and other statutory provisions related to victim compensation. *L.* 1991, *c.* 329. Unless otherwise indicated, all references are to the pre-amendment statutory provisions.

*Criminal Restitution: A Survey of Its Past History and an Analysis of Its Present Usefulness*, 5 *U.Rich.L.Rev.* 71, 71–75 (1970). Centuries ago, restitution had been an integral element of criminal law, which was then concerned primarily with the compensation of victims. Stephen Schafer, *Compensation and Restitution to Victims of Crime* 5 (2d ed. 1970). Gradually, the significance of victim compensation diminished as a goal of the criminal law and became instead a principal focus of the civil law. Laster, *supra*, 5 *U.Rich.L.Rev.* at 74.

The criminal law's reduced concern for the compensation of victims resulted from the State's increased assertion of authority over criminal misconduct. *Id.* at 76. As its authority increased, the State began to appropriate part of the victim's restitutionary payment, ultimately demanding it entirely. *Id.* at 75–80. Attempting to justify its usurpation of restitution, the State redirected the focus of criminal prosecutions from harm to victims to harm against society, explaining its appropriation of payments from the criminal as a means of punishing and deterring the wrongdoer. *Id.* at 77–80. *See generally* Jerome Hall, *Interrelations of Criminal Law and Torts: II*, 43 *Colum.L.Rev.* 967, 967–79 (1943) (discussing difference between crimes and torts in terms of harm caused); Kenneth Mann, *Punitive Civil Sanctions: The Middleground Between Criminal and Civil Law*, 101 *Yale L.J.* 1795, 1807–09 (1992) (describing purposes of criminal versus civil law). That payment was called a "fine," which came to be "understood to mean a payment to a sovereign as punishment for some offense." *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 *U.S.* 257, 265, 109 *S.Ct.* 2909, 2915, 106 *L.Ed.*2d 219, 232 (1989) (discussing applicability of Excessive Fines Clause of the Eighth Amendment to the United States Constitution to civil punitive damages).

Our statutory and case law reflect the historical distinction between fines and restitution. Prior to the adoption of the Code of Criminal Justice (the Code), restitution could be imposed only as a condition of probation. The probationer could

be required to "make reparation or restitution to the aggrieved parties for the damage or loss caused by his offense." *N.J.S.A.* 2A:168–2 (repealed by *L.* 1978, *c.* 95). Cases implicating restitution as a condition of probation involved offenders who had damaged or obtained wrongfully another's property. *See State v. Bausch,* 83 *N.J.* 425, 416 *A.*2d 833 (1980) (embezzlement); *State v. Harris,* 70 *N.J.* 586, 362 *A.*2d 32 (1976) (welfare fraud); *In re D.G.W.* 70 *N.J.* 488, 361 *A.*2d 513 (1976) (theft and destruction of property); *State v. Varlese,* 171 *N.J.Super.* 347, 409 *A.*2d 285 (App.Div.1979) (obtaining money under false pretenses), *certif. denied,* 82 *N.J.* 298, 412 *A.*2d 804 (1980); *State v. Blassingale,* 163 *N.J.Super.* 110, 394 *A.*2d 362 (App.Div.) (welfare fraud), *certif. granted,* 79 *N.J.* 464, 401 *A.*2d 221 (1978), *certif. dismissed,* 81 *N.J.* 48, 404 *A.*2d 1148 (1979). In comparison, fines were authorized in all cases, *see N.J.S.A.* 2A:85–6 & –7 (repealed by *L.* 1978, *c.* 95), and were imposed by the court to punish, correct, and deter the offender, as well as to deter others. *State v. Lavelle,* 54 *N.J.* 315, 326, 255 *A.*2d 223 (1969) (Weintraub, C.J., concurring).

The provisions of the Model Penal Code (MPC) dealing with fines and restitution, on which *N.J.S.A.* 2C:44–2 and other relevant provisions of the Code were based, did not focus as much on the intended recipient of restitution as they did on the penological objective to be furthered by its imposition. The MPC authorized restitution as a condition of probation only, *Model Penal Code* § 301.1(2)(h) (1985), reflecting the view that the rehabilitative purposes of probation were enhanced by the rehabilitative value of a requirement that the defendant pay restitution to the victim. *Model Penal Code* § 301.1, cmt. 7 (Tent. Draft No. 2, 1954). By prohibiting the imposition of a fine if it would "prevent the defendant from making restitution or reparation to the victim of the crime," *id.* at § 7.02(3)(b), the MPC also furthered criminal restitution's historic goal of compensating the victim.

The MPC drafters preserved the fine as an available sanction, acknowledging its effectiveness in preventing future social

harm. *See Model Penal Code, supra, Introduction to Articles 6 and 7*, at 2. To avoid its routine use and increase its deterrent effect, the MPC prohibited the imposition of a fine unless the defendant had derived a pecuniary gain, believing "that those who act in response to economic motives are more inclined than not to respond to the economic disincentives contained in the law." *Model Penal Code, supra* at § 7.02, cmt. 3. The drafters recognized that there might be other cases, such as serious vandalism, in which a fine would be specially adapted to deterrence generally or to the correction of the individual offender, and in that case a fine could be imposed even if the defendant had not derived a pecuniary gain. *Ibid.*

Our Code established that either a fine or restitution could be combined with a term of imprisonment. *N.J.S.A.* 2C:43–2b(4). The Code adopted the criteria of *Model Penal Code* § 7.02—that the defendant had derived a pecuniary gain or that the sanction be specially adapted to deterrence generally or the correction of the offender—for both restitution and fines. *N.J.S.A.* 2C:44–2a. Thus, the Code, like the MPC, reflects the view that in appropriate situations the imposition of a fine is an effective method of deterring conduct that causes social harm. II *The New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission* 327 (1971) (hereinafter *"Final Commission Report "*). The Code and its commentary also reveal an intention to preserve the historical use of restitution: "Unlike the MPC, we specifically allow the Court to order [in combination with a term of imprisonment] restitution to the victim up to the amount of the loss." *Id.* at 315. The Code explicitly limits the amount of "restitution ordered paid to the victim [to] his loss." *N.J.S.A.* 2C:43–3h. Finally, the Code prohibits the imposition of a fine if it would "prevent the defendant from making restitution to the victim of the offense." *N.J.S.A.* 2C:44–2b.

Very few cases have considered specifically the circumstances in which restitution would be an available sanction. In

*In re Parole Application of Trantino*, 89 *N.J.* 347, 446 *A.*2d 104 (1982), we interpreted a provision of the Parole Act of 1979 that authorized as a condition of parole "that the parolee make full or partial restitution." *N.J.S.A.* 30:4-123.59b. The issue was whether that language applied to a defendant who had committed an intentional murder. We acknowledged a technical difference between restitution, which, strictly defined, requires repayment to the victim of the fruits of the crime, and reparation, which extends to other losses and injuries. 89 *N.J.* at 357, 446 *A.*2d 104. We also noted that the primary purpose of restitution in the parole context was to aid in rehabilitating the defendant. *Id.* at 358, 446 *A.*2d 104. Thus, we concluded that because reparation was as efficacious as restitution in achieving that end, the Parole Board could require reparation as a condition of defendant's parole. *Id.* at 361, 446 *A.*2d 104. We cautioned, however, that because the primary goal was rehabilitation and "not to make the aggrieved person whole," the amount should be limited so that it would not become a "weapon for retribution," *id.* at 360, 446 *A.*2d 104, and therefore might be some figure less than complete compensation. *Id.* at 360-62, 446 *A.*2d 104.

*State v. Topping*, 248 *N.J.Super.* 86, 590 *A.*2d 252 (App.Div. 1991), is the only reported decision in this state that has considered the issue presented here: whether restitution can be ordered to reimburse a County for its expenditure of drug-buy money. That court "reject[ed] defendant's contention that restitution cannot be ordered because the State is not a 'victim' * * *." *Id.* at 89, 590 *A.*2d 252. Rather than focus on whether the State was a victim entitled to restitution, the court focused on the "first enumerated statutorily authorized purpose of ordering restitution—that the defendant should not profit from the offense." *Ibid.* The court concluded that the Code did not require the existence of a victim as a prerequisite to an order of restitution. The court noted that the State was not precluded from receiving restitution. *Ibid.* (citing *N.J.S.A.* 2C:43-3h). The court also recognized that the costs of prosecution were

unrecoverable because "[r]estitution is proper only when the loss sustained by a victim is the direct result of the criminal offense." *Ibid.* It observed that the agency's "loss * * * was a direct result of defendant's illegal drug distribution offenses * * *," *ibid.*, concluding that the money was therefore not a cost of prosecution and was recoverable as restitution. *Id.* at 89–90, 590 *A.*2d 252.

The historical distinction between fines and restitution remains clear: fines are payments demanded by the State to punish the wrongdoer and to deter conduct that causes social harm; restitution serves to rehabilitate the wrongdoer and to compensate the victim of the wrongdoer's conduct. Although *N.J.S.A.* 2C:44–2 establishes that either a fine or restitution may be imposed, along with a term of imprisonment, when the defendant had derived a pecuniary gain or the payment would be specially adapted to deterrence, a court's determination of the appropriate sanction should take into account the difference in the objectives they are designed to achieve.

### B.

At the time of defendant's sentencing, the court was required, before imposing a fine or restitution, to determine "if the defendant is able, or given a fair opportunity to do so, will be able to pay the fine or make restitution, or both." *N.J.S.A.* 2C:44–2b. If the court is satisfied that a defendant possesses or could possess that ability, it may set "the amount and method of payment * * *, tak[ing] into account the financial resources of the defendant and the nature of the burden that its payment will impose." *N.J.S.A.* 2C:44–2c (amended by *L.* 1991, *c.* 329).

The statute grants to the court considerable discretion in evaluating a defendant's ability to pay. The evaluation is necessarily imprecise because it contemplates an examination of the future ability to pay if the defendant currently does not have financial resources. Several safeguards, however, insure

that the amount of the sanction and the method of repayment are consistent with a defendant's means.

Subsequent to a guilty plea, the court receives a presentence investigation report, which includes a description of the circumstances surrounding the commission of the offense and information about the defendant, and may also include a statement from the victim describing the extent and nature of the damage caused or loss sustained. *N.J.S.A.* 2C:44–6a & –6b (amended by *L.* 1991, *c.* 329); *R.* 3:21–2. (Since defendant's sentencing, the Legislature has amended *N.J.S.A.* 2C:44–6 to include in the presentence investigation report more specific and detailed economic information, including a defendant's financial resources and debts. *L.* 1991, *c.* 329, § 7.) The presentence report must be provided to the defendant, and the defendant is entitled to a "fair opportunity to be heard on any adverse matters relevant to the sentencing." *State v. Kunz,* 55 *N.J.* 128, 144, 259 *A.*2d 895 (1969); *R.* 3:21–4(b). The court is required to state on the record the reasons for imposing the "sentence including [its] findings pursuant to the criteria for withholding or imposing imprisonment or fines under *N.J.S.A.* 2C:44–1 to 2C:44–3 * * *." *R.* 3:21–4(f); *State v. Harris,* 70 *N.J.* 586, 599, 362 *A.*2d 32 (1976) (stating that "statement of reasons" rule extends to imposition of restitution). Finally, the court may not impose restitution based on counts dismissed under the plea agreement "unless [the defendant] had voluntarily, with an understanding of the nature and consequences of what he is being asked to state, described a factual basis for liability." *Bausch, supra,* 83 *N.J.* at 436, 416 *A.*2d 833. (Although the propriety of imposing restitution on the basis of the dismissed counts is not before us, we note that the pre-sentence report set forth a detailed account of the buy money received by defendant in connection with the dismissed counts of the indictment.)

That pre-sentence procedure is essentially the same as that required when restitution is imposed as a condition of

probation. See *In re D.G.W., supra,* 70 *N.J.* at 503–07, 361 *A.*2d 513; *see also State v. Rhoda,* 206 *N.J.Super.* 584, 503 *A.*2d 364 (App.Div.) (recognizing that same procedure is necessary when restitution is imposed in combination with term of imprisonment), *certif. denied,* 105 *N.J.* 524, 523 *A.*2d 167 (1986). In *D.G.W.,* we held that the court was required to order from the probation department a report that would describe the nature and extent of damages for which defendant was being held liable, the valuation method, and financial information regarding the defendant's ability to pay. 70 *N.J.* at 503–04, 361 *A.*2d 513. The report was to be made available to the defendant, who was entitled to "object to any of the material statements of fact contained therein and [to] present such evidence on his own behalf as the trial judge in his discretion deems necessary to the proper resolution of the issue." *Id.* at 506, 361 *A.*2d 513 (citing *Morrissey v. Brewer,* 408 *U.S.* 471, 92 *S.Ct.* 2593, 33 *L.Ed.*2d 484 (1972)). We concluded that such a summary procedure was necessary to vindicate the defendant's property and liberty interests, the defendant being "minimally concerned" about the amount of restitution and "a reasonable method of repayment which realistically assesses his ability to pay." *Id.* at 503, 361 *A.*2d 513.

■ If the court decides that either a fine or restitution is appropriate, the court has the authority to devise an installment plan for payment. *N.J.S.A.* 2C:46–1a. *But see State v. DeBonis,* 58 *N.J.* 182, 196, 276 *A.*2d 137 (1971) (holding that Equal Protection Clause of the Fourteenth Amendment prohibits jailing defendant who cannot pay fine in a lump-sum payment and demands that defendant have opportunity to pay in installments). While incarcerated, a defendant may be employed and receive compensation. *N.J.S.A.* 30:4–92. In that event, "the superintendent of the institution shall withdraw sufficient moneys, in an amount not to exceed one-third of the inmate's total income, as may be required to pay any assessment, restitution or fine ordered as part of any sentence." *Ibid.* If the court

does not devise an installment plan, the money "shall be payable forthwith." *N.J.S.A.* 2C:46–1a.

If a defendant defaults on a payment, another detailed procedure is activated. See *N.J.S.A.* 2C:46–2. That statute authorizes the court, on its own motion or the motion of the person authorized to collect the payment, the victim entitled to restitution, the prosecutor, the Violent Crimes Compensation Board, or the State or County Office of Victim and Witness Advocacy, to have a defendant brought before the court for a hearing regarding the default. *N.J.S.A.* 2C:46–2a. In the case of a fine, several alternatives are authorized. If the default is without good cause and is willful, the court may substitute a term of imprisonment for a duration specified in the statute. *N.J.S.A.* 2C:46–2a(2). If no term of imprisonment is imposed, or if the default was with good cause or not willful, the court may alter the installment plan or impose a new one, or "if the court finds that the circumstances that warranted the fine have changed or that it would be unjust to require payment, the court may revoke or suspend the fine or the unpaid portion of the fine." *N.J.S.A.* 2C:46–2a(3). Additionally, the defendant may petition the court at any time for revocation of the fine. *N.J.S.A.* 2C:46–3.

The results of default on a restitution payment are somewhat different. If the default is willful, it "shall be considered to be contumacious." *N.J.S.A.* 2C:46–2a(4). With restitution, as compared to a fine, the court may not change the amount. If the defendant cannot pay, the only option is "to modify or establish a reasonable schedule for payment." *N.J.S.A.* 2C:46–2a(3). The default also subjects a defendant to various civil proceedings. *N.J.S.A.* 2C:46–2b, –2c.

The presence of those various procedural safeguards should not encourage complacency on the part of the sentencing court regarding the ability-to-pay evaluation. The court should be cognizant of the futility of imposing any fine or restitution when the defendant does not or probably will not

have the ability to pay. *Cf.* Administrative Office of the Courts, *Probation Statistical Summary Report: Court Year 1992,* Table C–1 & Probation Assessments Summary (Nov. 1992) (reporting that statewide in 1992, $24.2 million in restitution was assessed, but only $7.0 million collected, and $12.1 million in fines was assessed, but only $4.1 million collected). The court should also consider the purpose that the ability-to-pay inquiry serves in respect of restitution. Although restitution is concerned significantly with compensating victims, the justification for its use in the criminal law is that restitution also serves to rehabilitate the defendant. *Harris, supra,* 70 *N.J.* at 592–93, 362 *A.*2d 32; *In re D.G.W., supra,* 70 *N.J.* at 500, 361 *A.*2d 513. Imposing a sentence of restitution that requires payment of more than a defendant can afford would frustrate the goal of rehabilitation. *Trantino, supra,* 89 *N.J.* at 360–62, 446 *A.*2d 104. The ability to pay restitution has an enhanced significance because the Legislature recently has made restitution mandatory in those cases in which the statutory criteria are satisfied, *L.* 1991, *c.* 329, § 6b, *N.J.S.A.* 2C:44–2, and has not made available any means by which the amount may be reduced. *See N.J.S.A.* 2C:46–2a(3). Thus, the court must balance the goals of victim-compensation and offender-rehabilitation, and thoughtfully establish a fair and reasonable amount of restitution and method of repayment. *See N.J.S.A.* 2C:44–2c(2) (stating, as amended by *L.* 1991, *c.* 329, that court "shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay").

### III

#### A.

The principal issue before us is whether the Code authorizes the direct repayment of the drug-buy money, as restitution, to the County Prosecutor's Office. In making that determination, we acknowledge that the statutory precondition

for the imposition of restitution, at the time of defendant's sentence, was limited to the requirement that defendant "derived a pecuniary gain from the offense." *N.J.S.A.* 2C:44–2a(1). Plainly, that condition has been satisfied. However, we are persuaded that in addition to requiring a pecuniary gain, the Legislature intended to authorize the imposition of restitution only when the offense has caused a victim to suffer a loss.

Before the Legislature first made restitution an available option along with a term of imprisonment, the Criminal Law Revision Commission had observed that the Code differed from the Model Penal Code by "allow[ing] the Court to order restitution to the victim up to the amount of the loss." *Final Commission Report, supra,* at 315. Several of the Code's provisions mentioned the terms "victim" and "loss" in connection with restitution. *N.J.S.A.* 2C:43–3h ("The restitution ordered paid to the victim shall not exceed his loss * * *."); *N.J.S.A.* 2C:44–2b ("The court may sentence a defendant to pay a fine only if the fine will not prevent the defendant from making restitution to the victim of the offense."); *N.J.S.A.* 2C:46–2a ("When a defendant sentenced to * * * make restitution defaults in the payment thereof * * * upon the motion of * * * the victim entitled to payment of restitution, * * * the court shall recall him * * *."). Thus, the absence of an explicit provision in *N.J.S.A.* 2C:44–2a conditioning restitution on the existence of both a "victim" and a "loss" does not justify the conclusion that restitution is available whenever a defendant had derived a pecuniary gain from the offense. Rather, the omission is more likely to be attributable to the Legislature's awareness of the common use of restitution—to compensate victims of crime for their losses. *Cf. Compensation for the Innocent Victims of Crimes, 1966: Public Hearing on S. 284 Before the Comm. on Law & Pub. Safety* 5–11 (Nov. 30, 1966) (including comments of former Attorney General Arthur J. Sills concerning history of restitution and government compensation in criminal law).

The 1991 amendments to the Code's provisions dealing with victim compensation buttress our conclusion. See *L.* 1991, *c.* 329. One objective of those amendments was to clarify that a "purpose[ ] of the criminal code sentencing provisions [is] to promote restitution to victims." Assembly Judiciary, Law & Public Safety Committee, Statement to A. 4819 (June 6, 1991). That law, in part, changed the criteria for the imposition of restitution. Although the criteria for fines remained the same—that defendant had derived a pecuniary gain or the fine would be specially adapted to deterrence, and that defendant had or could have the ability to pay—those standards were made inapplicable to a determination regarding restitution. For restitution, the amended statute omits the requirement that the defendant derive a pecuniary gain and makes the imposition of restitution mandatory, not discretionary, whenever "[t]he victim, or in the case of a homicide, the nearest relative of the victim, suffered a loss," and defendant had or could have the ability to pay. *N.J.S.A.* 2C:44-2b. That change made explicit what previously had been implicit: that restitution is appropriate if the offense causes a victim to suffer a loss.

In determining whether the County Prosecutor's Office was a "victim who suffered a loss" when it paid defendant for the cocaine, we note that when the Legislature first authorized the imposition of restitution with a term of imprisonment, the Code did not indicate whether a State agency could be the recipient of restitution. In 1987, the Legislature amended various provisions of our tax law to increase revenue collection and, concomitantly, to strengthen related criminal penalties and enforcement mechanisms. *L.* 1987, *c.* 76, § 34. That law made the State an authorized recipient of restitution, amending *N.J.S.A.* 2C:43-3 to provide:

> The restitution ordered paid to the victim shall not exceed his loss, except that in any case involving the failure to pay any State tax, the amount of restitution to the State shall be the full amount of the tax avoided or evaded, including full civil penalties and interest as provided by law. In any case where the victim of the offense is any department or division of State government, the court shall order restitution to the victim.

Although that statute clarified that the State could be the recipient of restitution, it contemplated that restitution could be ordered paid to the State only when the State was a "victim."

At the time of defendant's sentencing, the statute defined "loss" as "the amount of value separated from the victim." *N.J.S.A.* 2C:43–3e. The 1991 amendments to the Code's provisions regarding restitution defined "victim" for the first time:

> The term "victim" shall mean a person who suffers a personal physical or psychological injury or death or incurs loss of or injury to personal or real property as a result of a crime committed against that person, or in the case of a homicide, the nearest relative of the victim.
>
> [*L.* 1991, *c.* 329, § 2 (codified at *N.J.S.A.* 2C:43–3e).]

When investigators from the County Prosecutor's Office purchased cocaine from defendant, the County was not a "victim who had suffered a loss" recoverable through restitution as that term is now defined by statute or as it has been historically understood. *People v. Evans,* 122 *Ill.App.*3d 733, 78 *Ill.Dec.* 50, 461 *N.E.*2d 634 (1984); *see also United States v. Salcedo–Lopez,* 907 *F.*2d 97 (9th Cir.1990) (interpreting federal Victim and Witness Protection Act of 1982, 18 *U.S.C.* §§ 3663–64, as not authorizing restitution for money used to purchase false birth certificates and Social Security cards). As noted, *supra* at 164; 623 *A.*2d at 1358, restitution's characteristic function has been to compensate those who have suffered injuries resulting from another's wrongful conduct. *See* Mann, *supra,* 101 *Yale L.J.* at 1809–10 (describing restitution as a "paradigmatic" civil-law remedy). Restitution in the criminal law was generally anticipated to provide the same remedy that it did in the civil law, and to reduce the obstacles that a victim confronts in the civil law in trying to obtain that remedy. Schafer, *supra,* at 117–22. As one commentator explained:

> There is a compelling intellectual case to be made for allowing victims of crimes to recover civil damages from their aggressors. In most cases, even though the two bodies of law are developed from divergent assumptions about individual responsibility, the same conduct that supports criminal prosecution usually supports a civil suit, even if the converse is not always true. The real issue, however, is not the *entitlement* question * * * but the procedural question— should the tort action be brought as part and parcel of the criminal proceeding?

[Richard A. Epstein, *Crime and Tort: Old Wine in Old Bottles,* in *Assessing the Criminal: Restitution, Retribution, and the Legal Process* 231, 255 (Randy E. Barnett & John Hagel III eds., 1977).]

We see no material difference between the payment of undercover drug-buy money and the payment to an informant for information leading to an arrest; in both instances, money is spent by the State to obtain evidence of crime. The County Prosecutor's Office spent the drug-buy money in order to obtain evidence of defendant's criminal conduct. Thus, the County Prosecutor's Office did not involuntarily suffer a "loss" in the usual sense of the word, nor was it a "victim" of defendant's crime. Unlike the typical case, in which the criminal act causes the victim's loss, the County expended funds to assist defendant in the commission of the offense. Although the County is out-of-pocket, its expenditure of drug-buy money to establish evidence of crime is not essentially equivalent to the kind of loss by a victim that would support a sentence of restitution. Accordingly, we hold that absent specific statutory authorization, restitution may not be imposed as a sanction to recover drug-buy money expended by the State. *See, e.g., People v. Davis,* 182 *A.D.*2d 635, 582 *N.Y.S.*2d 249, 250 (1992) (noting that Court of Appeals decision that disallowed restitution of drug-buy money because State was not victim, *People v. Rowe,* 75 *N.Y.*2d 948, 555 *N.Y.S.*2d 689, 554 *N.E.*2d 1277 (1990), had been superseded by express statutory authorization).

█ Although drug-buy money is not recoverable as restitution, a defendant who receives drug-buy money in connection with a drug sale should not benefit from participation in criminal conduct. Accordingly, drug-buy money should be taken into account by a trial court in connection with the imposition of a fine. A fine is payable to the State and is intended to punish and deter conduct that causes social harm. As the commentators to the Model Penal Code noted, "those who act in response to economic motives are more inclined than not to respond to the economic disincentives contained in the law." *Model Penal Code, supra* at § 7.02, cmt. 3. The Code authorizes the imposi-

tion of a fine when a defendant has derived a pecuniary gain from the offense. *N.J.S.A.* 2C:44–2a. That element is satisfied here. Thus, on remand, the trial court shall consider whether a fine should be imposed.

### B.

In view of our determination that the restitution order was improper, we need not resolve defendant's contention that the trial court's inquiry concerning ability-to-pay was inadequate. Because the case must be remanded for resentencing, we offer the following observations concerning the procedure to be followed in connection with the trial court's consideration of the imposition of a fine.

A fine is only one of several monetary sanctions that a defendant convicted of a drug offense may be required to pay. The other sanctions—the V.C.C.B. assessment, *N.J.S.A.* 2C:43–3.1; the forensic laboratory fee, *N.J.S.A.* 2C:35–20; and the D.E.D.R. penalty, *N.J.S.A.* 2C:35–15—are mandatory. The fine is the last of those sanctions to be apportioned from any money collected from a defendant. *N.J.S.A.* 2C:46–4.1. Thus, a defendant of limited means frequently is unable to pay the fine imposed by a sentencing court. *See Probation Statistical Summary Report, supra,* Table C–1 & Probation Assessments Summary.[2]

Accordingly, in examining defendant's ability to pay, the court should consider "the financial resources of the

---

[2] That Summary reports the following total statewide collection results for county probation operations for 1992:

|  | Imposed | Collected | % |
|---|---|---|---|
| V.C.C.B. | $ 1,518,963 | $ 977,052 | 64.3% |
| Restitution | 24,214,115 | 6,985,593 | 28.8% |
| Forensic Laboratory Fee | 918,105 | 560,597 | 61.1% |
| D.E.D.R. | 21,052,231 | 6,737,641 | 32.0% |
| Fines | 12,100,104 | 4,101,207 | 33.9% |

defendant and the nature of the burden that its payment will impose." *N.J.S.A.* 2C:44–2c. Although defendant contends that an evaluation of his ability to pay at the time of sentencing fails to address his prospective ability to pay after completion of his term of incarceration, the statute plainly contemplates that the court's evaluation focus on defendant's present financial condition, but does not exclude consideration of defendant's future financial circumstances. The court should grant defendant, if defendant elects, an "opportunity to be heard on any adverse matters relevant to the sentencing," *Kunz, supra,* 55 *N.J.* at 144, 259 *A.*2d 895, including the opportunity to present or contest evidence on the question of ability to pay. *In re D.G.W., supra,* 70 *N.J.* at 506, 361 *A.*2d 513. If the court decides that a fine is warranted, it should consider the authorization of installment payments, *N.J.S.A.* 2C:46–1a, and should state on the record its "reasons for imposing such sentence including [its] findings pursuant to the criteria for * * * fines under * * * *N.J.S.A.* 2C:44–3 * * *." *R.* 3:21–4(f). In determining defendant's ability to pay, the court should take into account the amount of drug-buy money that defendant received.

## IV

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.