687 A.2d 792

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. FRANK CORPI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 6, 1997—Decided January 30, 1997.

Before Judges PETRELLA, LANDAU and WALLACE.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Stephen A. Caruso*, Assistant Deputy Public Defender, of counsel and on the letter-brief).

*Ronald S. Fava*, Passaic County Prosecutor, attorney for respondent (*Steven E. Braun, Sr.* Assistant Prosecutor, of counsel and on the letter-brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Defendant Frank Corpi [1] was charged in Passaic County under three multi-count indictments including four counts of forgery, eleven bad check counts, and one count of theft by deception. A plea agreement was reached with the prosecutor, who agreed to recommend a maximum custodial exposure of fifteen years subject to a seven and one-half year parole ineligibility stipulation, based upon defendant's plea of guilty to five bad check counts selected from among the three indictments. The remaining counts for theft, forgery, and bad checks were to be dismissed. The Plea Form executed by defendant recites only the above recommendation.

At the time of this plea negotiation, defendant was subject to pending charges or detainers in or from the counties of Monmouth, Atlantic, Union, Bergen, and Morris, and various jurisdictions in New York, Massachusetts, and Connecticut. He had a lengthy criminal history, represented by defense counsel during the *retraxit* plea proceeding to include writing bad checks in a number of states to the possible extent of one million dollars.

During the *retraxit* plea proceeding, the following exchanges of comment occurred:

> THE COURT: All right. And as I understand, I understand the plea agreement the total exposure here is for a sentence to New Jersey State Prison of 15

---

[1] Although the pleadings continue to reflect defendant's name as Corpie, the transcript of the *retraxit* proceeding indicates that the correct spelling is Corpi.

years with a provision that you serve seven-and-a-half years without being eligible for parole, that's the maximum, the most that can happen to you at sentence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And the remaining counts of each of the three indictments will be dismissed.

MR. KAPLAN [Defense Counsel]: However, Judge, the record should reflect that the Prosecutor has agreed to change the recommendation to reduce it to a five year state prison sentence two-and-a-half without parole on all counts total, that would be the maximum exposure and they would run concurrent to one another provided that Mr. Corpi between now and sentencing is able to come up to the full restitution which I believe it [sic] $28,114 and change. When I say full restitution I'm talking about all ten counts in all three indictments he has to make restitution, not just the five we're referring to. Or all 13 counts, whatever it is.

And I would also suggest so that we avoid any potential conflict between the aggrieved party and the aggrieving parties, wherever he gets this money from his own sources or from his uncle, that the money should be paid to and through probation, that way there won't be any contact between all the various victims and the defendant or his representatives and we can have verification of payment rather easily, that way, Judge.

THE COURT: How much is the restitution?

MR. KAPLAN: .I believe it's 28,000 and change 28,114 and change.

THE COURT: $28,114, okay.

MR. KAPLAN: That's what I recall seeing when I added up all the numbers when I looked at the various counts yesterday, so I could facilitate this process moving faster because I know Mr. Snowdon was busy.

I would say this though, Judge, if it turned out that the Prosecutor checks the total and it came out to 29,000 and Mr. Corpi only came up with 28,000, I would certainly ask the Prosecutor to consider that as substantial compliance, and Mr. Corpi would agree to come up with the rest at a future date.

THE COURT: Is that the agreement?

MS. BORUM [Assistant Prosecutor]: Yes.

THE COURT: In other words, there's a conditional plea agreement, the exposure, the ceiling exposure is 15 with seven-and-a-half without parole, and if this restitution in the amount of approximately $28,000 is provided before sentence or at the time of sentence, then the State will agree to lower the exposure to five and two-and-a-half.

MS. BORUM: Yes, Judge.

THE COURT: All right.

Now that isn't on the plea form, but it is on the record so there's no secret about it.

It is apparent from this colloquy, notable for the absence of any participation by the prosecutor except to acquiesce, that the

restitution proposition was initiated by defendant. There was no demonstration prior to sentencing of defendant's ability to make restitution in the amount of $28,000. In fact, defendant did not arrange for payment of any restitution.

Defendant was sentenced within the ambit of the plea agreement to custodial terms, under the five counts, aggregating fifteen years with five years of parole ineligibility. Restitution of $5075 under those five counts was also ordered, together with appropriate VCCB and Safe Neighborhood assessments.

On appeal, defendant argues:

*POINT I*

THE PLEA BARGAIN IN THE PRESENT MATTER SHOULD BE DECLARED VOID AS BEING AGAINST PUBLIC POLICY AND BECAUSE IT VIOLATES THE DEFENDANT'S RIGHTS TO FUNDAMENTAL FAIRNESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT.

*POINT II*

THE SENTENCE IMPOSED WAS EXCESSIVE AND NOT IN CONFORMANCE WITH THE CODE OF CRIMINAL JUSTICE.

We conclude that the partly conditional plea agreement was not void under constitutional or other public policy principles, but that the sentence must be modified to delete the $5075 in restitution ordered therein.

## The Condition of Restitution

Defendant asserts that he was sentenced to ten additional years of prison only because he was unable to pay $28,114 in restitution, and that this amounts to the kind of invidious discrimination between the rich and the poor stricken down in *Bearden v. Georgia*, 461 *U.S.* 660, 664–667, 103 *S.Ct.* 2064, 2068–69, 76 *L.Ed.*2d 221, 227–230 (1983) and *Griffin v. Illinois*, 351 *U.S.* 12, 16–18, 76 *S.Ct.* 585, 589–91, 100 *L.Ed.* 891, 897–899 (1956). Defendant also points to *N.J.S.A.* 2C:44–2d which, when a defendant is *sentenced* to make restitution, expressly prohibits simultaneous imposition of an alternate sentence to be served in the event the restitution is not made. *N.J.S.A.* 2C:44–2d requires that, "[t]he response of the court to non-payment shall be determined only

after the fine or restitution has not been paid, as provided in Section 2C:46–2."

These arguments overlook critical differences between the procedural posture in the present case, and the circumstances considered in *Bearden*, *Griffin*, and *N.J.S.A.* 2C:44–2d. Initially, we note that defendant was not sentenced to make restitution of $28,000, and he was not punished for failure to do so. At defendant's insistence, the prosecutor agreed to lower the recommended custodial exposure, conditioned upon defendant making restitution to the victims under *all* counts (dismissed or not) of the three indictments. Defendant's counsel made the calculation that approximately $28,000 would cover all the victims.

In fact, the judge was never called upon to decide whether he would sentence on that basis because the possibility of restitution never matured to the point when it could be considered in sentencing the defendant.

Restitution may only be ordered following compliance with *N.J.S.A.* 2C:44–2b. The Supreme Court described it this way:

> At the time of defendant's sentencing, the court was required, before imposing a fine or restitution, to determine "if the defendant is able, or given a fair opportunity to do so, will be able to pay the fine or make restitution, or both." *N.J.S.A.* 2C:44–2b. If the court is satisfied that a defendant possesses or could possess that ability, it may set "the amount and method of payment . . ., tak[ing] into account the financial resources of the defendant and the nature of the burden that its payment will impose." *N.J.S.A.* 2C:44–2c (amended by *L.* 1991, *c.* 329).
>
> [*State v. Newman*, 132 *N.J.* 159, 169, 623 *A.2d* 1355 (1993).]

■ In this case, no finding of ability to pay was made prior to sentencing, presumably because everyone understood that it would be fruitless. Moreover, it is questionable whether the necessary factual basis was provided to support imposition of restitution on the counts to be dismissed under the plea agreement.

> In connection with a plea bargain facts underlying a count which has been dismissed may be considered in fixing the sentence for the conviction, *State v. Marzolf*, 79 *N.J.* [167] at 184–185 [398 *A.2d* 849 (1979)], but may not serve as a basis for restitution unless two additional conditions are satisfied. First, there should be a relationship between the restitution and the goal of rehabilitation with

respect to the offense for which the defendant is being sentenced. Second, there must be an adequate factual basis supportive of the restitution.

... [T]here be demonstrated to the trial court a showing of the amount due the victim and of the defendant's ability to repay.

[*State v. Bausch*, 83 N.J. 425, 435, 416 A.2d 833 (1980).]

Here, the preliminary steps required by case law and statute were not reached. Absent a factual basis and findings of ability or probable ability to pay, restitution could not have been ordered. But the concept of restitution was introduced by defendant, who, unlike the prosecutor, was in a position to evaluate whether it was realistic.

Defendant specifically acknowledged during the *retraxit* proceedings that a sentence of fifteen years with seven and one-half years of parole ineligibility could be imposed, absent restitution. Was that a denial of due process?[2] We think not.

Defendant advanced the idea, and assented at the *retraxit* proceeding to a sentence (higher than that ultimately imposed) in exchange for the State dropping most of the charges in the three indictments. He received the benefit of his bargain, which he said he understood and discussed with counsel.

Apart from that, *N.J.S.A.* 2C:44–1b(6) expressly provides that the court may properly consider, in mitigation of a sentence about to be imposed, that "[t]he defendant has compensated or will compensate the victim of his conduct ..."

Recognition of the ameliorating effect of restitution to the victim is historic. Its purpose has been explained varyingly in terms of aiding rehabilitation of the wrongdoer, denying a wrongdoer any fruits of the crime, compensation to the victim for financial loss, or a combination of those factors. *See, e.g., State v. Newman, supra,* 132 *N.J.* at 169, 623 *A.*2d 1355; *State v. Bausch, supra,* 83 *N.J.* at 434–36, 416 *A.*2d 833; *In re Trantino,* 89 *N.J.* 347, 360, 446 *A.*2d

---

[2] In *Bearden, supra,* at 461 *U.S.* at 666, n. 8, 103 *S.Ct.* at 2069, n. 8, 76 *L.Ed.*2d at 229, n. 8, the Court considered due process, rather than equal protection, to be the "appropriate" inquiry.

104 (1982); *State v. Harris*, 70 *N.J.* 586, 592, 362 *A.*2d 32 (1976); *State v. Pulasty*, 259 *N.J.Super.* 274, 283, 612 *A.*2d 952 (App.Div. 1992), *aff'd other grds.*, 136 *N.J.* 356, 642 *A.*2d 1392 (1994), *cert. den.* —— *U.S.* ——, 115 *S.Ct.* 579, 130 *L.Ed.*2d 494 (1994); *State v. Davidson*, 225 *N.J.Super.* 1, 541 *A.*2d 700 (App.Div.), *certif. den.* 111 *N.J.* 594, 546 *A.*2d 518 (1988); *State v. Rhoda*, 206 *N.J.Super.* 584, 589–91, 503 *A.*2d 364 (App.Div.), *certif. den.* 105 *N.J.* 524, 523 *A.*2d 167 (1986).

Whether viewed in terms of recognition of victim's rights, rehabilitation, or deprivation of financial benefits from crime, it is well established that the legislature can authorize the courts to take into account restitution when imposing a sentence, provided that procedures for ascertaining factual basis and present or potential ability to pay are followed. In *People v. Felman*, 141 *A.D.*2d 889, 529 *N.Y.S.2d* 400 (N.Y.App.Div.), *leave to appeal denied*, 72 *N.Y.*2d 918, 532 *N.Y.S.*2d 852, 529 *N.E.*2d 182 (1988), where, as here, the legislature made restitution a factor to be considered in sentencing, it was held that "[t]his statutory directive anticipates that restitution may be an element of the plea-bargain package," particularly where defendant specifically so acquiesced during the plea allocution. The *Felman* court noted that in *Bearden, supra,* 461 *U.S.* at 669–671, 103 *S.Ct.* at 2071–72, 76 *L.Ed.*2d at 230, the Supreme Court recognized that a sentencing court may consider a defendant's ability to make restitution in tailoring the sentence, *Felman, supra,* 529 *N.Y.S.*2d at 401, and that this did not constitute an imprisonment for indigency.

We agree with this analysis. In the facts of this case, we hold that defendant has received fundamental fairness, and there has been no denial of due process in the plea and sentencing process arising from the partly conditional sentence recommendation.

As noted above, the judge was never called upon to decide the questions of factual basis and present or potential ability to pay restitution to victims under the counts which were to be dismissed. Unfortunately, although sufficient factual basis was presented at the *retraxit* plea proceeding for the amounts involved under the

five counts to which defendant pleaded guilty, the judge did not comply with the requirement of ascertaining defendant's ability to pay restitution on those counts. Moreover, neither the Plea Form nor the discussions at the *retraxit* proceeding advised defendant that restitution might be imposed in addition to a custodial sentence within the prosecutor's recommendation.

Normally, the latter fact might not pose a bar to imposition of a restitutionary requirement, (*see State v. Rhoda, supra,* 206 *N.J.Super.* at 595–96, 503 *A.*2d 364), assuming compliance with the requisite preliminary findings on ability to pay and presence of a factual basis. Here, however, a fair reading of the *retraxit* plea transcript presents a different picture than that in *Rhoda.* Defendant, we think, would reasonably have believed that no restitution would be required if the basic plea recommendation came into effect. Consequently, and in light of the absence of any finding on present or potential ability to pay, we conclude that the sentence must be modified to delete the requirement that defendant make restitution in the amount of $5,075.

The judgment of conviction and sentence is in all other respects affirmed. Remanded solely for correction of the restitution requirement.