**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4992-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANCES M. WISE, a/k/a
FRANCES M. DEEMER, and
FRANCES M. FINCH,

    Defendant-Appellant.

_____

Submitted November 7, 2018 – Decided  December 21, 2018

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Warren County, Indictment No. 15-01-0004.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Richard T. Burke, Warren County Prosecutor, attorney for respondent (Kelly Anne Shelton, Assistant Prosecutor, of counsel and on the brief; Amy Knutsen, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Frances M. Wise stole over $75,000 from an elderly relative while she had a power of attorney to handle the victim's finances. A jury convicted defendant of second-degree theft, N.J.S.A. 2C:20-3(a); second-degree misapplication of entrusted property, N.J.S.A. 2C:21-15; and second-degree theft by deception, N.J.S.A. 2C:20-4(c). The conviction for theft was merged with the conviction for theft by deception and defendant was sentenced to concurrent prison terms of seven years on the conviction for misapplication of entrusted property and theft by deception. Defendant was also ordered to pay $143,000 in restitution. Defendant appeals her conviction and the imposition of restitution. We affirm her conviction, but vacate the restitution award and remand for a full hearing on restitution.

I

We take the facts from the record developed at trial. Defendant held a power of attorney for her cousin, J.B.,[1] from 2009 to 2013. At that time, J.B. was over eighty years of age and she had limited financial experience. J.B. had been married for sixty-five years, and while her husband was alive, he handled the couple's finances. J.B.'s husband passed away in August 2010. When her

_____

[1] We use initials for the victim and a witness to protect privacy interests.

A-4992-16T4

husband passed away, J.B.'s main financial assets were a home that she had lived in for sixty years, which had no mortgage, and a savings account. J.B. had monthly income from Social Security and her husband's pension, and that income covered her expenses.

In 2013, defendant gave up the power of attorney and a family friend, L.M., took over the power of attorney for J.B. L.M. discovered that J.B.'s bank accounts had been depleted and a reverse mortgage had been placed on the home. She reported that situation to the Division of Aging and, thereafter, the police conducted an investigation. The investigation revealed that J.B. had two bank accounts in her name. In 2009, J.B.'s savings account held nearly $32,000. A checking account was opened in September 2010, and funds from a $10,000 open-end mortgage on J.B.'s home, which was taken out that same month by defendant, were deposited into both accounts. By 2013, both accounts had been depleted. Bank records collected during the investigation showed that those depletions resulted from a series of withdrawals, a number of which were withdrawals from automatic teller machines (ATMs). The victim, who testified at trial, explained that she never made those withdrawals and she did not have an ATM card or know how to make ATM withdrawals.

A-4992-16T4

The investigation also revealed a reverse mortgage on J.B.'s home. Bank statements and reverse mortgage statements, which were admitted into evidence, showed that in a six-month period in 2011, the mortgage went from $82,000 to nearly zero. The victim testified that she never authorized or needed a mortgage.

The evidence at trial also established that when the equity in the home had been depleted and the bank accounts had been emptied, defendant informed J.B. that she no longer wanted to have the power of attorney. Based on that evidence, the jury convicted defendant of theft, misapplication of entrusted property, and theft by deception. Defendant now appeals.

II

On appeal, defendant makes three arguments, which she articulates as follows:

> POINT I – THE COURT USURPED THE DEFENDANT'S DECISION-MAKING AUTHORITY, DECIDING TO ISSUE THE CHARGE ON THE DEFENDANT'S ELECTION NOT TO TESTIFY WITHOUT HER CONSENT.
>
> POINT II – BY ARGUING THAT THIS CASE WAS ABOUT "THE ELDERLY" IN GENERAL, AND ENCOURAGING THE JURY TO HOLD MS. WISE "ACCOUNTABLE" THROUGH A CONVICTION, THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT.

4

POINT III – THE COURT SHOULD REMAND THE MATTER FOR A RESTITUTION HEARING, FOR A DETERMINATION OF BOTH THE APPROPRIATE MONETARY VALUE OF RESTITUTION, AND MS. WISE'S ABILITY TO PAY.

Having reviewed these arguments in light of the record and law, we reject the first two arguments and affirm defendant's convictions. Because there was no hearing on restitution, we remand for a hearing.

A.    The Instruction on Defendant's Election Not to Testify

Defendant did not testify at trial. As a result, the judge read to the jury the election-not-to-testify charge. Although the judge informed both defendant and defense counsel that such a charge would be given, neither defendant nor her counsel objected. On appeal, however, defendant argues that the court usurped her right to elect not to have the charge given.

If a defendant elects not to testify, the judge should directly inquire of defendant, in the presence of defense counsel, whether defendant is making that election and whether defendant wants the court to give a specific election-not-to-testify jury charge. State v. Cusumano, 369 N.J. Super. 305, 314 (App. Div. 2004) (citing State v. Savage, 120 N.J. 594, 631 (1990)). Under ordinary circumstances, the court should inquire directly of defendant whether he or she wants the charge given. State v. Lynch, 177 N.J. Super. 107, 114-15 (App. Div.

A-4992-16T4

1981).  Moreover, the charge should not be given except when defendant requests it.  Id. at 115 (citing State v. McNeil, 164 N.J. Super. 27, 30 n.1 (App. Div. 1978)).

On the last day of trial, defendant stated on the record that she was electing not to testify.  The trial judge then had the following dialogue with defendant:

> THE COURT:  Thank you, Ms. Wise.  You understand that you do have the right to remain silent.  You understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And that if you choose to exercise that right to remain silent and you do not testify at trial the jury cannot hold it against you?  You understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  As a result of your election not to testify there will be a charge given to the jury that they can't hold that against you.  Let me read you that charge.
>
> As you know, the defendant elected not to testify at trial.  It is her constitutional right to remain silent.  You must not consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify.
>
> That fact should not enter into your deliberations or discussions in any manner at any time.  Defendant is entitled to have the jury consider all evidence presented at trial.  She is presumed innocent whether or not she testifies – chooses to testify.

A-4992-16T4

Do you understand that the Court will read that jury charge?

THE DEFENDANT: Yes, sir.

Neither defendant nor defense counsel objected to the court giving the instruction. Thereafter, the trial judge, counsel, and defendant held a charge conference. The jury charge and defendant's election not to testify were reviewed during the charge conference. There was, however, no objection to that charge. Finally, when the charge was actually given to the jury, there was no objection.

We are satisfied that any error in failing to inquire specifically whether defendant wanted the charge was harmless. Although the better practice would have been for the judge to expressly inquire of defendant and defense counsel whether they wanted the court to give the election-not-to-testify instruction, here there was no reversible error. The trial court twice informed defendant and defense counsel that the election-not-to-testify charge would be given and there was no objection. Thus, both counsel and defendant knew that the charge was going to be given and neither indicated in any way that they had an objection to that charge. Given that record, we discern no plain error. See R. 2:10-2. Indeed, even when an election-not-to-testify charge is given over a defendant's objection, such an instruction does not violate the defendant's constitutional

7

right against self-incrimination.  Lakeside v. Oregon, 435 U.S. 333, 340 (1978); McNeil, 164 N.J. Super. at 31.

B.    Remarks by the Prosecutor

Next, defendant argues that the assistant prosecutor engaged in misconduct by making arguments about "the elderly."  "Both the prosecutor and the defendant are allowed wide latitude in summation, but are confined to the facts in evidence and the reasonable inferences which may be drawn therefrom."  State v. Perry, 65 N.J. 45, 47-48 (1974) (citations omitted) (first citing State v. Bogen, 13 N.J. 137, 140 (1953); then citing State v. Hill, 47 N.J. 490, 499 (1966)).  Prosecutorial misconduct comes about when the "emotional force of the prosecutor's arguments pose[] a significant risk that the jury [will] be diverted from its duty to determine defendant's punishment based on the evidence and in accordance with the trial court's charge."  State v. Rose, 112 N.J. 454, 521 (1988).

In assessing whether prosecutorial misconduct requires reversal, we determine whether the conduct "was so egregious that it deprived the defendant of a fair trial."  State v. Frost, 158 N.J. 76, 83 (1999) (citing State v. Ramseur, 106 N.J. 123, 322 (1987)).  Accordingly, we "consider whether defense counsel made a timely and proper objection, whether the remark was withdrawn

8

promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.  If no objection is made, the remarks usually will not be deemed prejudicial."  Ramseur, 106 N.J. at 323 (citation omitted).

During her opening statement, the assistant prosecutor stated:

> This case is not just a theft case.  This case is about crimes against the elderly, the vulnerable, and the trusting.  The case is about [J.B.]  She's an 87-year-old woman who trusted the defendant [Frances] Wise as her power of attorney with her finances.  However, the evidence is going to show you that her money, all of her money, was taken by Ms. Wise not for the benefit or the use for [J.B.]
>
> . . . .
>
> Now once you do this and you have the evidence that's presented to you in this case by the State, at that time I am confident that you're going to take that evidence, the documents that will be given to you, your recollection of the testimony from the State's witnesses, and you're going to go back in that deliberation room and you're going to deliberate and you're going to come back and you're going to hold this woman, Ms. Wise, accountable for her actions because we're here for one reason, one reason only – the crime is about [J.B.] and taking advantage of the elderly and the trusting and vulnerable.
>
> But we're here for one reason and that reason is the conduct of that woman.  And with that, I would like to thank you for your time, your consideration on the case, and above all your patience.  Thank you.

9

In her closing argument, the assistant prosecutor stated: "Now we get to a point and remember I told you in my opening that this wasn't just a theft case, it's a crime against elderly." Defendant did not object to either statement in the opening or closing. Accordingly, we review these statements for plain error to determine if the error is "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

Here, we find no plain error. Read in context, the prosecutor's remarks were directed at the victim involved in this case. J.B. was in her eighties when defendant stole from her. The assistant prosecutor properly commented on the age and vulnerability of the victim. The references to "the elderly" were not made in the context of a general argument about protecting the elderly as a class.

C.   Restitution

Finally, defendant argues that the matter should be remanded for a restitution hearing. In imposing restitution, the court did not hold a restitution hearing. The State concedes that this matter should be remanded for a hearing on the ability of defendant to pay restitution. We direct that the matter be remanded for a full restitution hearing. At the hearing, the issues of the amount of restitution and defendant's ability to pay should be addressed.

A-4992-16T4

Restitution "serves to rehabilitate the wrongdoer and to compensate the victim of the wrongdoer's conduct." State v. Newman, 132 N.J. 159, 169 (1993); see also N.J.S.A. 2C:43-3 ("A person who has been convicted of an offense may be sentenced to pay a fine, to make restitution, or both[.]"). In imposing restitution, "the court must balance the goals of victim-compensation and offender-rehabilitation, and thoughtfully establish a fair and reasonable amount of restitution and method of payment." Newman, 132 N.J. at 173. If there is a good-faith dispute over the amount of loss or defendant's ability to pay, the court is required to conduct a restitution hearing to resolve those issues. N.J.S.A. 2C:44-2(c); State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994). Here, as noted, the sentencing court did not conduct a restitution hearing. Accordingly, we vacate the amount of restitution and remand for a hearing to determine the amount of restitution and defendant's ability to pay.

The conviction is affirmed, we remand for a restitution hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4992-16T4