920 A.2d 715 (2007)
392 N.J. Super. 307
STATE of New Jersey, Plaintiff-Respondent,
v.
Eliezer MARTINEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 2006.
Decided April 19, 2007.
*716 Justin T. Loughry, Moorestown, argued the cause for appellant (Loughry and Lindsay, attorneys; Mr. Loughry, on the brief).
Sherry L. Wilson, Deputy Attorney General, argued the cause for respondent (Stuart Rabner, Attorney General, attorney; Ms. Wilson, of counsel and on the brief).
Before Judges WEISSBARD, PAYNE and LIHOTZ.
The opinion of the court was delivered by
*717 PAYNE, J.A.D.
Defendant, Eliezer Martinez, the former chief executive officer and president of Hispanic Counseling & Family Services (HCFS), a Camden mental health counseling center founded by defendant, appeals from his convictions for second-degree health care claims fraud in violation of N.J.S.A. 2C:21-4.2 and -4.3, and third-degree Medicaid fraud in violation of N.J.S.A. 30:4D-17(a), arising from knowing over-billing of mental health counseling services performed by HCFS's counselors. After reducing the second-degree crime to one of the third degree for purposes of sentencing, the trial judge imposed a custodial sentence of five years for health care fraud and a concurrent three-year custodial sentence for Medicaid fraud. Additionally, the judge imposed a restitution obligation of $137,958 and a fine of $275,916. The judgment of conviction stated with respect to restitution:
The restitution of $137,958.00 imposed by the Court represents approximately 20% of the total claims submitted by Hispanic Counseling and Family Services from May 1, 1998 through December 31, 1998, said restitution is imposed pursuant to N.J.S.A. 2C:43-3h.[1]
With respect to the fine, the judgment of conviction stated:
The fine of $275,916.00 represents twice the pecuniary benefit realized by the defendant, said fine is authorized pursuant to N.J.S.A. 2C:21-4.3(a).[2] Additionally, the fine imposed is necessary to deter this defendant and others from engaging in similar fraudulent enterprises.
This portion of the judgment of conviction concluded with the following statement:
It is the Court's opinion that the fines and restitution imposed against this defendant are necessary and appropriate and are imposed in accordance with the criteria set forth in N.J.S.A. 2C:44-2.
On appeal, defendant initially asserted the following arguments:
I. THE PROSECUTION'S SUMMATION URGED A THEORY THAT THE STATE NEVER PRESENTED TO THE GRAND JURY AND THUS SOUGHT CONVICTION FOR A CRIME FOR WHICH ELIEZER MARTINEZ NEVER HAD BEEN INDICTED, IN VIOLATION OF HIS RIGHT NOT TO BE CONVICTED OR PROSECUTED WITHOUT A GRAND JURY HAVING INDICTED, AND IN VIOLATION OF PRINCIPLES OF DUE PROCESS AND FUNDAMENTAL FAIRNESS.
A. The State's Change Of Theory Upon Summation, And Injection Of A Theory Of Liability That Contradicted The Grand Jury Presentation, Violated The Grand Jury Clause Of The State Constitution, Art. I Sec. 8.

B. The Prosecution's Summation Involved Impermissible "Sandbagging."

C. The Holding in State v. Talley Does Not Save This Case From The Constitutional Infirmity of Transgressing From The Indictment Clause Of The Federal And State Constitutions, Nor Does It Cure The Violation Of Fundamental Fairness From An Eleventh-Hour Change Of Theory.

*718 D. Independent Of Concerns For "Notice" And "Due Process," The Doctrine Of Judicial Estoppel Renders The Prosecution's Summation Improper.

II. THE STATE IMPERMISSIBLY INVOKED THE JURY'S SUPPOSED DUTY TO VINDICATE OR AVENGE THE INTERESTS OF THE POOR AND THE DISABLED.
III. THE COURT ERRED IN DECLINING TO CHARGE THE JURY ON THE DIFFERENCE BETWEEN NEGLIGENCE AND RECKLESSNESS, AND IN DECLINING TO CHARGE ON THE DEFINITION OF NEGLIGENCE.
IV. THE COURT'S IMPOSITION OF RESTITUTION IN THE PROSECUTION'S SUGGESTED AMOUNT WAS CONTRARY TO LAW.
V. EVEN IF THE COURT MAKES THE DETERMINATION AS TO AMOUNT OF RESTITUTION, THE COURT'S ANALYSIS, IN ACCEPTING THE PROSECUTION'S PROFFERED SUGGESTION, LACKED ANY BASIS IN THE RECORD, AND MUST BE REVERSED.
At oral argument, defense counsel withdrew arguments expressed pursuant to Points I through III, and limited the appeal to the restitution and fine arguments set forth in Points IV and V. We affirm in part and reverse in part.

I.
At trial, the State established that defendant had created HCFS in July 1995 to provide mental health counseling services primarily to members of the Latino community. The organization's application for status as a Medicaid provider was approved, effective July 1996, and pursuant to that approval, it submitted claims to the State as administrator of the Medicaid program. The Medicaid Provider Manual that HCFS received set forth billing codes for half-hour and one-hour counseling sessions that required, in accordance with state Medicaid regulations, twenty-five minutes of counseling as a condition for billing a half-hour session and fifty minutes of counseling as a condition for billing a one-hour session. Additionally, it provided a code for one-hour family counseling sessions, requiring fifty minutes of counseling. See N.J.A.C. 10:66-6.4(f)(2)-(4).
After Medicaid program employees noticed that "the number of counselors that they had approved for the clinic did not account for the number of hours that they could possibly have billed the Medicaid Program," in February 1999, an investigation of HCFS's billing practices was commenced. An inspection of the facility by Medicaid investigators, occurring on February 19, 1999, disclosed evidence of substantial over-billing. The facility closed within a short time thereafter. On May 31, 2002, defendant, along with office manager Olga Marquez and counselors Sandy Silva, Olga Bonett, Juanita Melendez, Jose Jimenez, Bartolo Moreno, and Luz Senquiz, were indicted for health care claims and Medicaid fraud.
Trial of defendant was held over a period of fourteen days in September and October 2004. Prior to trial, defendants Marques and Silva had been admitted into Camden County's pretrial intervention program, and at the time of trial, defendant Moreno's application for admission to that program was pending. Defendants Melendez, Bonett and Jimenez had pled *719 guilty to unspecified charges.[3] Each of these defendants testified at the trial, as did other part-time employees of the facility and a number of its clients.
Testimony disclosed that, although the number of hours worked by the witnesses varied, each testified to billing and being paid for counseling hours that were substantially in excess of the time during which counseling actually had been performed. Melendez testified to working from 9:00 a.m. to 5:00 p.m. and some Saturdays, but to billing twelve to fifteen hours per day, a fact confirmed by a summary chart prepared by the State and introduced into evidence. Documents relating to Bonnet disclosed, among other things, that when she worked 136 hours, she billed and was paid by HCFS for 180.[4] Silva, who worked from 8:30 a.m. to 4:30 p.m., billed twelve, thirteen or fifteen hours per day.[5] Jimenez, who worked a twelve-hour day, was instructed to bill fifteen one-hour sessions.[6] Evidence demonstrated that Moreno, who worked a twelve-hour day, with no work on Saturdays, billed and was paid by HCFS for ninety hours per week.[7]
All counselors testified to being instructed by defendant to bill in the range of twelve to fifteen hours per day, regardless of their counseling time. Office manager Marquez testified that she was instructed by defendant that any counseling time below thirty minutes could be billed as a half-hour session, and that anything over thirty-one minutes could be billed as an hour session. Counselor Jimenez testified similarly. The remaining witnesses testified to being instructed by defendant to bill all sessions as lasting one hour, even if they were as short as fifteen minutes. Additionally, the counselors testified that defendant instructed them to bill family sessions on a one-hour per individual basis, and all but Jimenez, who saw no families, did so.
The counselors were, likewise, instructed by defendant to bill telephone counseling at the hourly rate, even when it lasted ten to fifteen minutes. Not all counselors engaged in telephonic counseling. But those who did so billed as instructed. Similarly, home counseling was billed as an hour, family members counseled together were billed separately, and travel time was included within the billing.
Defendant did not perform counseling services during the period in question. However, evidence established that he *720 orchestrated the counselors' billing practices, approved their hours, and signed their paychecks. During trial, the State presented proof that HCFS had submitted approximately 31,000 claims totaling almost $700,000 to Medicaid in the eight-month period at issue, many of which were fraudulent.
Following the jury's return of a verdict finding defendant guilty of both charges against him, a motion for a new trial or judgment of acquittal was filed. It was denied.
At sentencing, the State sought $137,958 in restitution from defendant based on the theory that twenty percent of the claims were false, as well as fines of $689,790. It was the State's position that the counselors at HCFS could have seen twelve patients for one-hour counseling sessions during a twelve-hour day, but not fifteen. The difference constituted the restitutionary sum requested, and the fine sought was five times that amount.
At sentencing, the trial judge imposed the amount of restitution suggested by the State, observing that it "represents approximately 20 percent of the total claims submitted by Hispanic Family and Counseling Services from May 1st, 1998 through December 31st, 1998." The judge also imposed a fine of twice that amount: $275,916.

II.
On appeal, defendant first contends that the trial court violated his Sixth Amendment's right to a jury trial, as established by the decisions of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), when he ordered restitution in an amount greater than $1,000: the sum that the State was required to prove had been fraudulently obtained by defendant in order to be convicted of a second-degree crime pursuant to N.J.S.A. 2C:21-4.3c.
We disagree. In the three cases upon which defendant relies, the United States Supreme Court established that the due process clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, and the jury trial guarantees of the Sixth Amendment require that a jury find, beyond a reasonable doubt, any fact, other than the fact of a prior conviction, that serves to increase the maximum penalty for a crime. Booker, supra, 543 U.S. at 244, 125 S.Ct. at 756, 160 L.Ed.2d at 650; Blakely, supra, 542 U.S. at 303-04, 124 S.Ct. at 2537, 159 L.Ed.2d at 413-14; Apprendi, supra, 530 U.S. at 490, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455. See also State v. Natale, 184 N.J. 458, 484, 878 A.2d 724 (2005) (applying the principles of Apprendi, Blakely and Booker to invalidate the New Jersey Criminal Code's system of presumptive term sentencing).
The issue of whether the principles established by Booker and its predecessors bar a sentencing judge, in the absence of a jury finding, from setting the amount of restitution required of a defendant pursuant to the federal Mandatory Victims Restitution Act (MVRA) 18 U.S.C.A. § 3663A (requiring "restitution to each victim in the full amount of each victim's losses as determined by the court" regardless of the economic circumstances of the defendant) and the Victim and Witness Protection Act (VWPA), 18 U.S.C.A. § 3663 (permitting an order of restitution, after consideration of the amount of the victim's loss and the *721 financial resources of the defendant)[8] has been extensively discussed in the federal courts.
Significantly, ten of the Federal Circuit Courts of Appeals have found the Booker line of cases inapplicable to the imposition of restitution. See, United States v. Milkiewicz, 470 F.3d 390, 403 (1st Cir.2006); United States v. Reifler, 446 F.3d 65, 113-20 (2d Cir.2006); United States v. Leahy, 438 F.3d 328, 337-38 (3d Cir.) (en banc), cert. denied, ___ U.S. ___, 127 S.Ct. 660, 166 L.Ed.2d 547 (2006); United States v. Garza, 429 F.3d 165, 170 (5th Cir.2005) (per curiam), cert. denied, ___ U.S. ___, 126 S.Ct. 1444, 164 L.Ed.2d 143 (2006); United States v. Sosebee, 419 F.3d 451, 461 (6th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 843, 163 L.Ed.2d 718 (2005); United States v. George, 403 F.3d 470, 473 (7th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 636, 163 L.Ed.2d 515 (2005); United States v. Miller, 419 F.3d 791, 792-93 (8th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1379, 164 L.Ed.2d 85 (2006); United States v. Bussell, 414 F.3d 1048, 1060 (9th Cir. 2005); United States v. Wooten, 377 F.3d 1134, 1144-45 & n. 1 (10th Cir.), cert. denied, 543 U.S. 993, 125 S.Ct. 510, 160 L.Ed.2d 381 (2004); Dohrmann v. United States, 442 F.3d 1279, 1281 (11th Cir.2006); cf. United States v. Alamoudi, 452 F.3d 310, 314-15 (4th Cir.2006) (addressing forfeiture of substitute assets in the same legal context). No Circuit Court of Appeals has found otherwise.
Booker itself specifically exempted from its holding forfeitures imposed under 18 U.S.C.A. § 3554 for violations of RICO[9] and certain portions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 543 U.S. at 258, 125 S.Ct. at 764, 160 L.Ed.2d at 659, and offers no rationale to support a different conclusion in connection with other forfeiture statutes.
Further, the Third Circuit reasoned in Leahy:
Under both the VWPA and the MVRA, when a defendant is convicted of certain specified offenses, restitution is authorized as a matter of course "in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). Hence, under a plain reading of the governing statutory framework, the restitution amount authorized by a guilty plea or jury verdict  the full amount of loss  may not be exceeded by a district court's restitution order; that is, a district court is not permitted to order restitution in excess of that amount. In imposing restitution, a district court is thus by no means imposing a punishment beyond that authorized by jury-found or admitted facts. Though post-conviction judicial fact-finding determines the amount of restitution a defendant must pay, a restitution order does not punish a defendant beyond the "statutory maximum" as that term has evolved in the Supreme Court's Sixth Amendment jurisprudence. . . . There can therefore be no Booker violation in the imposition of restitution under the VWPA or the MVRA.
. . . .
Under the defendants' view, the conviction itself yields a restitution amount of zero dollars, and the factual finding of *722 the amount of loss therefore increases the sentence beyond the maximum sum authorized by the facts, in violation of Booker. On the contrary, we see the conviction as authorizing restitution of a specific sum, namely the "full amount of each victim's loss"; when the court determines the amount of loss, it is merely giving definite shape to the restitution penalty born out of the conviction.
[Leahy, supra, 438 F.3d at 337.]
The New Jersey statutes governing restitution in the present case, like the federal statutes, require the payment of restitution to a victim who has suffered a loss, N.J.S.A. 2C:44-2b(1), and cap restitution at the full amount of that loss. N.J.S.A. 2C:43-3h.[10] New Jersey's further requirement that the court "shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay," N.J.S.A. 2C:44-2c(2), is not found in the federal statute. Nonetheless, we regard the differences between the two statutory schemes (relating principally to the ability to pay) to be essentially irrelevant to the Sixth Amendment issue raised, and the federal decisions that we have cited to be compelling precedent as to which defendant offers no countervailing argument. Accordingly, we reject defendant's claim that the Sixth Amendment bars the sentencing judge's determination of the amount of restitution to be paid in this case.

III.
Defendant next argues that the sum that the trial judge set as restitution was not supported by evidence in the record. Defendant assumes that the judge's calculation was based upon the premise that each counselor billed fifteen hours per day, and that the clinic was open only twelve hours per day, leaving a three-hour or twenty percent difference, which was then subtracted from the clinic's total billings in the period under scrutiny. Defendant then argues that the State's own study demonstrated that the counselors did not uniformly bill fifteen hours per day, and he argues further that evidence demonstrated that the clinic kept longer hours than the eleven hours specified in clinic literature.
It is clear that in order for restitution to be imposed, an actual loss from defendant's actions must be demonstrated. State v. Harris, 70 N.J. 586, 593, 362 A.2d 32 (1976); State v. Kennedy, 295 N.J.Super. 364, 367, 685 A.2d 55 (App.Div.1996), rev'd on other grounds, 152 N.J. 413, 705 A.2d 757 (1998). Nonetheless, "[t]he amount and manner of payment of reasonable restitution is a matter for the judgment of the sentencing judge." Harris, supra, 70 N.J. at 598, 362 A.2d 32 (quoting People v. Gallagher, 55 Mich.App. 613, 223 N.W.2d 92, 96 (1974)).[11] In that connection, the burden of proof remains on the prosecution, and the fact to be proved, the amount of the restitution, "must be proved to the satisfaction of the court," N.J.S.A. *723 2C:1-13d(2), by a preponderance of the evidence. State v. Oliver, 298 N.J.Super. 538, 560, 689 A.2d 876 (Law Div.1996), aff'd, 316 N.J.Super. 592, 720 A.2d 1001 (App.Div.1998), aff'd, 162 N.J. 580, 745 A.2d 1165 (2000). "Due process is satisfied by affording the defendant a hearing on the amount of restitution . . . and where there is a factual basis in the record to support the court's determination of the amount of restitution." Harris, supra, at 598-99, 362 A.2d 32.
In the present case, the hearing consisted of the trial, and the factual basis consisted of the evidence presented there. Because of the nature of the fraudulent conduct and the absence of documents that would accurately record the extent of the fraud, the State could not precisely establish the amount of the loss sustained as the result of the conduct occurring at HCFS. However, we find the evidence to have been sufficient to support the trial judge's conclusion that twenty percent of the amount of the claims was fraudulent. It is noteworthy in that respect that the trial judge did not find, as defendant appears to contend, that each counselor regularly billed fifteen hours while working a twelve-hour day, but only that the specified percentage of the billings was fraudulent. This finding was adequately supported by evidence of substantial over-billing by counselors working less than twelve hours a day, billing for unperformed Saturday counseling services, over-billing of telephone and home counseling, individual billing of joint family counseling, and specific examples of payments made to counselors in excess of hours worked. If anything, the amount of restitution fixed by the trial judge may have under-valued the loss.
The First Circuit has observed:
The law cannot be blind to the fact that criminals rarely keep detailed records of their lawless dealings, totalling up every column and accounting for each misbegotten dollar. Hence, the preponderance standard must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution.
[United States v. Savoie, 985 F.2d 612, 617 (1st Cir.1993).]
Other federal courts have adopted the same approach. See, e.g., United States v. Narvaez, 995 F.2d 759, 764 (7th Cir.1993) (a court may discharge its obligation to calculate the loss by making a reasonable estimate of the range of the loss, given available information)[12]; United States v. Hand, 863 F.2d 1100, 1104 (3d Cir.1988) ("Difficulties of measurement do not preclude the court from ordering a defendant to compensate the victim through some restitution."). We find the approach to be authorized here, as well. Harris, supra, 70 N.J. at 599, 362 A.2d 32.
Defendant argues that he did not directly benefit by the full amount of every fraudulent claim, because pay to the counselors was based upon the number of hours that they billed, including those that were billed fraudulently.[13] However, N.J.S.A. 2C:44-2b (unlike paragraph -2a of that statute, governing fines) does not require evidence that defendant received a pecuniary gain from his criminal conduct; *724 only that the victim suffered a loss.[14]See also State v. Paone, 290 N.J.Super. 494, 496, 676 A.2d 159 (App.Div.1996) (discussing statutory history). Moreover, as in Paone, defendant did receive a pecuniary gain from his offense. As there, he paid his own salary out of corporate funds, and he maintained an independent interest in the business of HCFS and the property on which it was located. Ibid.
In Paone, a case involving failure to remit unemployment compensation payments, we concluded our opinion by stating:
The defendant here was certainly the responsible corporate officer. He was the president. He prepared the unemployment forms and was responsible for filing them with the State. He knew it was his duty to make the contributions which included withholdings from the employees' salaries. Instead of remitting the contributions, he paid other corporate obligations including his salary. Under these circumstances, we are entirely satisfied that the Legislature intended that he be required to make restitution to the public fund.
[Id. at 497, 676 A.2d 159.]
We find our observations in Paone to be equally applicable to defendant in the health care and Medicaid fraud circumstances presented in this case. The imposition upon defendant of an obligation of restitution was warranted insofar as it reflected losses sustained as the result of the fraud committed by defendant and the counselors at HCFS, working under defendant's authority.

IV.
We note, however, that N.J.S.A. 2C:44-2b(2) makes payment of restitution contingent upon the defendant's ability to pay at the time of sentencing or in the reasonably foreseeable future. Further, N.J.S.A. 2C:44-2a(3) permits the discretionary imposition of a fine only if it "will not prevent the defendant from making restitution to the victim of the offense."
At sentencing, evidence was presented by the State regarding the equity contained in real estate owned by defendant and regarding the $72,000 in salary that he continued to receive through other employment. While acknowledging those proofs, defendant objected to their sufficiency as a basis for a finding that he had an ability to pay the restitution and fines that the State sought. The judge rejected defendant's position and determined that defendant had an ability to pay the restitution and fine imposed upon him.
On appeal, defendant argues that he is entitled to a hearing on the issue of his ability to pay. We agree with his position in that regard and therefore remand for such a hearing. N.J.S.A. 2C:44-2(c); State v. Newman, 132 N.J. 159, 178-79, 623 A.2d 1355 (1993); Paone, supra, 290 N.J.Super. at 497, 676 A.2d 159. Upon remand, the trial court can make any monetary adjustments that are required by the evidence presented.
Affirmed in part, reversed in part and remanded for further proceedings in accordance with this opinion.
NOTES
[1] The provision limits restitution to the amount of the victim's loss.
[2] The section permits imposition of a fine of up to five times the pecuniary benefit obtained or sought to be obtained from health care claims fraud.
[3] Luz Senquiz did not testify at trial, and her status is not reflected in the record.
[4] Bonett testified that she worked twelve-hour days during the week and an eight-hour day on Saturdays. Charts prepared by the State disclosed billings ranging from fourteen to sixteen hours per day in May, twelve to fifteen hours per day in August, and fifteen hours per day in September and December.
[5] The State's evidence disclosed billings of twelve to fifteen hours per day in May, ten to fifteen hours per day in August, fifteen hours per day in September, and fifteen hours per day in December, 1998. Yet, Silva testified to working an eight-hour day. Additionally, the State's compilation disclosed routine Saturday billings of twelve to fifteen hours. Silva did not work on Saturdays, and the clinic was only open for eight hours on that day.
[6] The State's evidence revealed uniform fifteen-hour billings in May, no work in August and September, and billings ranging from seven to fifteen hours in December. Saturday billings during December were uniformly for fourteen hours per day.
[7] Moreno testified that he did not work on Saturday. Nonetheless, the State's record disclosed consistent billings for that day ranging from ten to fifteen hours per day. Moreno's billings in September ranged from fourteen to fifteen hours per day, and his billings for December were uniformly at a rate of fifteen hours per day.
[8] Both the VWPA and the MVRA are enforced through 18 U.S.C.A. § 3664, which states: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C.A. § 3664(f)1(A). to that extent, the federal scheme differs from that of New Jersey.
[9] The federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961-68.
[10] Fines, such as that imposed upon defendant, are permitted pursuant to N.J.S.A. 2C:21-4.3(a) in an amount "up to five times the pecuniary benefit obtained or sought to be obtained." See also, N.J.S.A. 2C:43-3e (permitting imposition of a fine "equal to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense by the offender").
[11] The Third Circuit has specifically held that, although whether restitution is permitted is an issue of law subject to plenary review, the appropriateness of a particular award is judged on appeal by an abuse of discretion standard. United States v. Fallon, 470 F.3d 542, 548 (3d Cir.2006). See also Harris, supra, 70 N.J. at 599, 362 A.2d 32 (utilizing that standard).
[12] The federal sentencing guidelines specifically authorize courts to reach an expeditious, reasonable determination of restitution. However, we regard that authorization to be implicit in our own sentencing scheme.
[13] The record does not demonstrate that a restitution obligation was imposed upon any of the other defendants.
[14] N.J.S.A. 2C:43-3, which also concerns fines and restitution, merely sets the limits on the monetary amounts imposed, not the criteria for imposition, which are found in N.J.S.A. 2C:44-2.