**STATE of Minnesota, Respondent,**

v.

**Larry Darnell MAXWELL, Appellant.**

**No. A10–1689.**

Court of Appeals of Minnesota.

Aug. 15, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Bradford Colbert, Adam Pabarcus (certified student attorney), Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; WORKE, Judge; and COLLINS, Judge.*

## OPINION

WORKE, Judge.

Appellant challenges the district court's restitution order, arguing that (1) he is entitled to a jury trial to determine the underlying facts on which the amount of restitution was based, and (2) the district court erred when it ordered restitution because there was an insufficient causal nexus between appellant's crimes and the victim's losses. We affirm.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to   Minn. Const. art. VI, § 10.

## FACTS

Appellant Larry Darnell Maxwell was involved in a real-estate scheme, procuring more than $2,000,000 in fraudulent mortgage loans. Appellant used his association with and control over a real-estate-brokerage business to gain access to information facilitating identity thefts, forgeries, and thefts by swindle. The state charged appellant with racketeering, two counts of identity theft, nine counts of theft by swindle over $35,000, and six counts of aggravated forgery. A jury convicted appellant on all 18 counts.

Appellant waived his right to a restitution hearing and the parties stipulated that the district court would determine restitution based on written submissions. Based on the written submissions, the district court ordered appellant to pay restitution to the identity-theft victim in the amount of $217,687.54, which included $196,275.54 for losses resulting from the victim's inability to refinance his home mortgage, and $6,600 for the costs of consulting a credit specialist and for credit repair and credit-shield protection. This appeal follows.

## ISSUES

I. Was appellant entitled to a jury trial on the issue of restitution?

II. Did the district court err by ordering appellant to pay restitution to compensate the victim for his inability to obtain mortgage refinancing, as well as the costs of credit-rehabilitation services?

## ANALYSIS

### I. *Right to Jury Trial*

■ Appellant argues that he is entitled to a jury trial to determine the underlying facts on which to base the amount of restitution.[1] As support, appellant relies on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Blakely* and *Apprendi* do not involve restitution orders, but require that a jury must find beyond a reasonable doubt any facts that justify enhancing a sentence or penalty for a crime beyond the statutory maximum. *Blakely*, 542 U.S. at 303–05, 124 S.Ct. at 2537–38; *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63.

Whether *Blakely* or *Apprendi* applies to restitution orders is an issue of first impression in Minnesota. But several state and federal courts have addressed the issue and have uniformly held that *Blakely* and *Apprendi* are inapplicable to restitution orders because "restitution statutes do not set a maximum restitution amount that can be ordered." *People v. Smith*, 181 P.3d 324, 327 (Colo.Ct.App.2007); *see United States v. Milkiewicz*, 470 F.3d 390, 404 (1st Cir.2006) (stating that "[t]he statutory restitution scheme is materially different from the sentencing regimens at issue in *Blakely* "); *United States v. Reifler*, 446 F.3d 65, 118 (2d Cir.2006) (concluding that the *Blakely* principle requiring jury findings to establish the maximum authorized punishment has no application to restitution orders made under the Mandatory Victims Restitution Act); *United States v. Wooten*, 377 F.3d 1134, 1144 n. 1 (10th Cir.2004) (stating that a restitution order does not violate either *Blakely* or *Apprendi* if it does not exceed the statutory-maximum restitution amount or the value of the damages to the victim); *see also State v. Clapper*, 273 Neb. 750, 732 N.W.2d

---

1. We note that appellant waived his right to a restitution hearing. Nevertheless, we review this issue under the assumption that having the opportunity for a jury to determine restitution might have affected appellant's willingness to waive the hearing.

657, 662 (2007) (adopting the principle that the *Apprendi–Blakely* rule does not apply to restitution orders in reliance on 11 federal circuit courts reaching the same conclusion); *State v. Martinez*, 392 N.J.Super. 307, 920 A.2d 715, 722 (N.J.Super.Ct.App.Div.2007) (holding that restitution order does not punish defendant beyond statutory maximum); *People v. Horne*, 97 N.Y.2d 404, 740 N.Y.S.2d 675, 767 N.E.2d 132, 139 (2002) (holding that sentencing court is not increasing a maximum sentence available when it makes factual determinations affecting restitution, but is merely issuing a sentence within an authorized statutory range); *State v. McMillan*, 199 Or.App. 398, 111 P.3d 1136, 1139 (2005) (holding that restitution statutory maximum is the amount of pecuniary damages as determined by the court); *State v. Kinneman*, 155 Wash.2d 272, 119 P.3d 350, 355 (2005) (holding that restitution statute provides a scheme that is more like indeterminate sentencing not subject to jury determinations under the Sixth Amendment). Despite appellant's contrary contention, Minnesota's restitution statutes also do not prescribe a statutory maximum for restitution amounts. *See* Minn.Stat. §§ 611A.04 to .045 (2008). Based on the unmistakable consensus of the persuasive authority, we conclude that *Blakely* and *Apprendi* are inapplicable to restitution orders.

## II. *Restitution Amount*

■ Appellant also argues that the district court erred by ordering him to pay restitution for the victim's inability to refinance his home mortgage and the victim's costs associated with consulting a credit specialist and purchasing credit protection. Appellant asserts that his actions did not directly cause these losses. We disagree.

■ Whether to allow a particular item of restitution is a question of law subject to de novo review. *State v. Thole*,

614 N.W.2d 231, 234 (Minn.App.2000). A victim of a crime has the right to receive restitution that "include[s], but is not limited to, any out-of-pocket losses resulting from the crime." Minn.Stat. § 611A.04, subd. 1(a). Restitution is primarily intended to compensate the crime victim for losses by restoring the victim's original financial condition. *State v. Terpstra*, 546 N.W.2d 280, 283 (Minn.1996). Overall, restitution is allowable only for "the victim's losses ... directly caused by the conduct for which the defendant was convicted." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn.App.1999) (quotation omitted).

There is a direct causal link between appellant's identity theft and the victim's inability to refinance his home mortgage and subsequent purchase of credit consulting and protection. The victim submitted an affidavit stating that he was going to refinance his home mortgage, but could not as a result of appellant's identity theft. The victim's affidavit is supported by a letter from a mortgage consultant stating that the victim contacted the consultant to refinance his home mortgage. The letter also states that the victim's credit, before the identity theft, qualified him for the best refinancing available. The mortgage consultant states that the theft of the victim's identity, which resulted in poor creditworthiness, prohibited him from completing the refinance transaction. The consultant's letter also provides a detailed calculation of the economic loss suffered as a result of the victim's inability to refinance. This shows a direct causal connection between appellant's identity theft and the victim's inability to refinance his home mortgage. The district court did not err by ordering appellant to pay restitution for the victim's inability to refinance his home mortgage.

The record also shows that appellant's illegal use of the victim's identity ruined

his credit. The victim's credit issues were complex and required the advice of a credit specialist to resolve. The identity theft also meant that the victim would continue to suffer economic harm in the future and, therefore, would require credit-shield and repair-protection services. The victim's purchase of credit-consulting and shield-protection services was intended to prevent future harm from appellant's identity theft. Thus, these costs were a reasonably foreseeable result of, and were directly caused by, appellant's actions. The district court did not err by ordering restitution for these costs.

## DECISION

We conclude that appellant was not entitled to a jury trial on the issue of restitution under *Blakely* and *Apprendi* because Minnesota does not provide a statutory maximum for restitution amounts. We also conclude that the district court did not err in awarding the specific amounts of restitution. Accordingly, the district court's restitution award is affirmed.

**Affirmed.**