**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3707-23

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

YAHMIR Y. BROWN,

 Defendant-Appellant.

_____

Submitted February 3, 2026 – Decided February 27, 2026

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 23-04-0153.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Rebecca Van Voorhees, Assistant Deputy Public Defender, of counsel and on the briefs).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Christopher R. Lyons, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Yahmir Y. Brown appeals from a judgment of conviction entered on July 1, 2024, after he was found guilty by a jury of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). We affirm.

I.

We summarize the relevant procedural history and facts developed during defendant's trial. On November 23, 2022, the victim, B.S., was working at a smoke shop in Franklin.[1] At approximately 11:40 p.m., defendant, who was eighteen years old at the time, entered the store with K.W., who was a juvenile, and another unidentified individual.[2] The ensuing events were captured on surveillance video from inside and outside the store, which was played for the jury.

K.W. and the unidentified individual were wearing face masks. B.S. asked them to remove their masks, which they refused to do. B.S. then pointed to the door, directing them to leave. Defendant was waiting for B.S. to assist him with his purchase. B.S. was helping other customers and defendant became frustrated and impatient. Defendant reached into the tip jar on the counter to get

---

[1] We use initials to protect the victim's medical records, reports, and evaluations. R. 1:38-3(a)(1).

[2] We use initials to protect juvenile delinquency records and reports. R. 1:38-(d)(5).

A-3707-23

B.S.'s attention. In response, B.S. told defendant to leave the store and called the police.

Defendant began arguing with B.S. and then he struck the tip jar with the back of his hand causing it to hit the shelves behind B.S. B.S. retrieved a baseball bat from behind the counter and chased defendant and the others from the store. B.S. then reentered the store. Defendant returned to the front door and continued to argue with B.S. through the closed door. Defendant was telling B.S. to "come outside, come outside."

B.S. exited the store and chased the three with the baseball bat again, at one point swinging it and striking the ground near defendant. Once defendant and the others rounded the corner and were out of sight, B.S. turned around, opened the front door, and began entering the store. As B.S. was doing so, defendant came back around the corner, ran at B.S. from behind, and struck him in the head with a closed fist, knocking him against the door and to the ground. K.W. then struck B.S. several times with his fists while he was on the ground. The three individuals returned to their car and fled.

On April 5, 2023, a Somerset County grand jury returned an indictment charging defendant with second-degree aggravated assault. A four-day jury trial was conducted in May 2024.

B.S. testified he sustained a shattered eye socket, sinus, and cheekbone, and damage to his teeth, some of which were missing. He underwent an eight-hour reconstructive surgical procedure during which four plates were inserted in his face. He also had all his teeth replaced. At the time of trial, he continued to experience vision problems, including double vision and blurriness.

Defendant testified at trial and admitted he is the person seen on the surveillance video running up behind B.S. and striking him. Specifically, he testified on direct examination:

> [Defense Counsel:] Did you run back after [B.S.]?
>
> [Defendant:] Yes
>
> [Defense Counsel:] Did you hit him?
>
> [Defendant:] Yes
>
> [Defense Counsel:] Did you punch him?
>
> [Defendant:] Yes
>
> [Defense Counsel:] Closed fist?
>
> [Defendant:] Yes

After that, defendant saw K.W. "punching his face in."

On cross-examination, defendant testified:

> [State:] And you[ would] agree that by the time you round[ed] the corner, and you were looking down

4

towards the entrance and that [B.S.'s] back is to you; is that right?

[Defendant:] Yes

[State:] And still you charge him[?]

[Defendant:] Yes.

[State:] Even though he can[not] see you[?]

[Defendant:] Yes.

[State:] You take step after step in a run, right?

[Defendant:] Yes.

[State:] You form a fist with your left hand, right?

[Defendant:] Yes.

Defendant claimed, "[he] only hit [B.S.] one time." The State argued defendant is seen on the video assaulting B.S. multiple times and, when B.S. was on the ground, defendant and K.W. were "beating [him] together."

On May 8, the court conducted a charge conference after providing counsel with a copy of the proposed jury instructions. With respect to accomplice liability, the proposed instructions incorrectly included Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6(c)(1)(c)) Accomplice – Legal Duty" (approved June 7, 2021), instead of Model Jury

5

<u>Charges (Criminal)</u>, "Liability for Another's Conduct (N.J.S.A. 2C:2-6) Accomplice" (rev. June 7, 2021).  Defendant did not object.

Instead, defendant requested that the court include an instruction on "mere presence," which is an optional section to be "read if appropriate" in both Model Charges.  The court included the requested instruction.  Specifically, when reading <u>Model Jury Charges (Criminal)</u>, "Liability for Another's Conduct (N.J.S.A. 2C:2-6(c)(1)(c)) Accomplice – Legal Duty," at 3-4, the court instructed the jury that:

> Mere presence at or near the scene does not make one [a] participant in the crime, nor does the failure of a spectator to interfere make him [a] participant in the crime.  It is, however, a circumstance to be considered with the other evidence in determining whether or not he was present as an accomplice.
>
> Presence in itself is not conclusive of the fact.  Whether presence has any probative value depends upon the total circumstances.  To constitute guilt, there must exist a community of purpose for the crime committed.
>
> While mere presence [at] the site of the perpetration . . . of crime does not render a person as a participant in it[,] [p]roof that one is present at the scene of the commission of a crime[,] without disapproving or [op]posing it is evidence from which[,] in connection with other circumstances[,] it[ is] possible for a jury to infer that he assented there[]to[,] lent to its countenance and approval and was thereby aiding in same.

It depends on the totality of the circumstances as those circumstances appear from the evidence.

Before the court completed its instructions, the State advised the court that the accomplice charge it read was incorrect and requested the court read the correct accomplice liability charge. Defendant objected because "if you re-charge as to one theory, you[ are] highlighting it." The court agreed with the defense's position. The court "agree[d] that the accomplice liability charge differ[ed] from the one in [the State's] proposed charge" and determined "[i]f there are questions about the accomplice liability[, it would] address the correct charge." Defendant again did not object.

Later that day, the jury sent a note asking if they were "to decide whether . . . defendant is solely responsible for the severe bodily injury . . . or a contributor. Is he still guilty . . . if he contributed to the [severe bodily injury], even if [they] can[not] determine whether he was solely responsible?" The court, interpreting this question as one relating to accomplice liability, proposed to "read the correct charge of accomplice liability and give it to them as a separate . . . instruction." Defendant agreed and reasoned "we should probably at this junct[ure] charge them with the original intended accomplice liability charge . . . as a separate instruction."

7

The court then told the jury they "hit on a deficiency in the charge that [it] read" and it would "read . . . the correct charge" and give them a written copy of the charge. The court instructed the jury to "disregard what[ is] in the [original] charge . . . where it starts with liability for another's conduct," but not to disregard the section on "mere presence." The court told the jury, "[w]e[ are] going to resume so mere presence should [be kept] in."

The court proceeded to read the correct accomplice liability charge consistent with Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6) Accomplice." The court did not reread the mere presence section that was included in the instructions it read earlier that day. The jury was dismissed for the day after the corrected charge was read. Due to a scheduling conflict, trial did not resume the following day.

When the jury returned on May 10, the court provided the jury with "a new charge that contain[ed] the correct section on accomplice liability" that the court read on the afternoon of May 8. The court instructed the jury to "follow and use . . . the final jury charge." The written jury instructions the court provided on May 10 included the "mere presence" section the court read to the jury in the original charge. Defendant did not object to the final written jury

instructions. Later that day, the jury found defendant guilty of second-degree aggravated assault.

K.W. was charged as a juvenile. He received a one-year suspended sentence.

Defendant was sentenced on July 1, 2024. Defendant sought a downgraded sentence in the third-degree range pursuant to N.J.S.A. 2C:44-1(f)(2).[3] He asked the court to find mitigating factors three, "defendant acted under a strong provocation," N.J.S.A. 2C:44-1(b)(3); four, "[t]here were substantial grounds tending to excuse or justify the defendant's conduct," N.J.S.A. 2C:44-1(b)(4); five, "[t]he victim . . . induced or facilitated" defendant's conduct, N.J.S.A. 2C:44-1(b)(5); six, that defendant "will compensate the victim for the . . . injury," N.J.S.A. 2C:44-1(b)(6); nine, "[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense," N.J.S.A. 2C:44-1(b)(9); and fourteen, "defendant was under [twenty-six] years of age at the time of the . . . offense," N.J.S.A. 2C:44-1(b)(14).

---

[3] N.J.S.A. 2C:44-1(f)(2) provides, in relevant part, "[i]n cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower."

The State requested restitution in the total amount of $38,690, which reflected "strictly unreimbursed out of pocket expenses incurred by the [victim's] family as a result of the injuries." That amount included $38,280 paid by the victim to Broadway Dental Arts for uninsured dental work and $410 for optical frames and lenses. According to the adult presentence report, the Victims of Crime Compensation Office (VCCO) paid the victim $25,000. The State requested restitution in the amount of $25,000 payable to the VCCO pursuant to N.J.S.A. 2C:44-2(c)(2), and $14,134.51 payable to the victim.[4]

Defendant asked the court to find mitigating factor six based on an award of restitution but objected to the amount of restitution the State requested. Defendant first objected because the State incorrectly calculated the amount payable to the victim as $14,134.51, instead of $13,690. Defendant "certainly . . . [did not] have any dispute with the [$]25,000 going back to the" VCCO or the $410 "that dealt with the eye doctor." Defendant objected to the victim's claim for uninsured dental procedures because the State only provided "a signed proposal[,] . . . not confirmation of treatment," and there was no proof

_____

[4] N.J.S.A. 2C:44-2(c)(2) provides, in relevant part, "[t]he court shall not reduce a restitution award by any amount that the victim has received from the [VCCO], but shall order the defendant to pay any restitution ordered for a loss previously compensated by the [VCCO] to the [VCCO]." Effective January 21, 2020, the Victims of Crime Compensation Board became known as the VCCO.

B.S. paid $38,280 to Broadway Dental Arts. Defendant also objected to the restitution request based on his ability to pay and "ask[ed] th[e] court to seriously consider not imposing $38,690 restitution."

After summarizing the fact of the case, including defendant's conduct and the victim's injuries, the court found aggravating factor nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), "appl[ied] and . . . [gave] it some significant weight." The court found mitigating factor fourteen applied and "[gave] it great weight." The court found mitigating factor seven applied even though defendant had "one juvenile adjudication." It found mitigating factor six applied because defendant was "going to be paying restitution to the victim." The court also found mitigating factor nine applied because "his character and attitude do indicate that he is unlikely to commit another offense."

The court declined to find mitigating factor four applied because it did not "think there were substantial grounds tending to excuse the conduct." It did not find mitigating factors three and five applied because "the victim's conduct did[ not] induce or facilitate him getting punched in the face."

The court denied defendant's application for a downgraded sentence, finding "while the aggravating factors are outweighed by the mitigating factors,

11

[it] d[id not] think they substantially outweigh[ed] the mitigating factors." It "sentence[ed] him at the minimum end of the range" to five years in prison subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Turning to the restitution award, the court noted the "VCCO is entitled to be reimbursed for monies it pays out on behalf of victims" but $25,000 "is a lot to [expect]." It "d[id not] find that an [eighteen]-year-old who is going to come out of . . . [p]rison with a record is going to have a reasonable chance of paying that." The court found "[h]e is young. He[ is] going to have a long time to work. He is going to be able to find some sort of employment." The court determined "a fair amount of restitution [would] be $10,000 that can be paid half to [B.S.] and half to the VCCO."

The court advised the parties "[s]hould [they] disagree with that restitution amount, they [could] always request a restitution hearing which th[e] [c]ourt [would] be happy to conduct." The court asked counsel if there were "any clarifications or corrections of the . . . sentence." Defense counsel responded, "[j]udge, no issue with the restitution." A conforming judgment of conviction was entered the same day. This appeal followed.

II.

12

On appeal, defendant raises the following points for our consideration.

POINT I

[DEFENDANT] WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE [COURT] GAVE A CONCEDEDLY FAULTY AND HOPELESSLY CONFUSING ACCOMPLICE LIABILITY JURY INSTRUCTION.

POINT II

A RESENTENCING IS NECESSARY TO RECONSIDER WHETHER AGGRAVATING FACTOR NINE APPLIES AND WHETHER A DOWNGRADE IS WARRANTED.

    A. The Sentencing Court Erred in Finding Aggravating Factor Nine.

    B. The Sentencing Court Did Not Adequately Weigh the Aggravating and Mitigating Factors.

    C. A Downgrade in [Defendant]'s Sentence Was Warranted.

POINT III

A REMAND FOR A RESTITUTION HEARING IS NECESSARY TO DETERMINE THE APPROPRIATE AMOUNT TO IMPOSE AND [DEFENDANT]'S ABILITY TO PAY.

    A. The Record Does Not Establish the Victim's Actual Loss.

    B. The Court Failed to Find that [Defendant] Could Pay $10,000 in Restitution.

13

III.

We are unpersuaded by defendant's argument, raised for the first time on appeal, that the court's jury instruction on accomplice liability was confusing and denied his right to a fair trial. "An essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." State v. Afanador, 151 N.J. 41, 54 (1997). "Correct jury instructions are 'at the heart of the proper execution of the jury function in a criminal trial.'" Ibid. (quoting State v. Alexander, 136 N.J. 563, 571 (1994)). The trial judge must explain the law as it relates to the facts and issues of the case. State v. Baum, 224 N.J. 147, 159 (2016).

"It is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." State v. Reddish, 181 N.J. 553, 613 (2004). Indeed, every "request must concern legal and factual issues that have been properly raised in the proceedings." State v. Green, 86 N.J. 281, 290 (1981). Further, "[e]very request must state the correct principles of applicable law in a manner that is tailored to the facts of the case and is not misleading." Ibid. "The charge as a whole must be accurate." State v. Singleton, 211 N.J. 157, 182 (2012).

14

"The proper standards of review of jury instructions are well-settled: if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." State v. Cooper, 256 N.J. 593, 607 (2024) (quoting Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018)). Plain errors are those "clearly capable of producing an unjust result." R. 2:10-2. Demonstrating plain error "is a 'high bar,' . . . requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 336 (1971)).

"To determine whether an alleged error rises to the level of plain error, it 'must be evaluated in light of the overall strength of the State's case.'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)) (internal quotation marks omitted). "The 'high standard' used in plain error analysis 'provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error.'" State v. Burnham, 474 N.J. Super. 226, 230 (App. Div. 2022) (quoting Santamaria, 236 N.J. at 404).

Defendant contends the "remedial charge" the court gave was "incomplete and left the jury hopelessly confused" because the court did not reread the section on "mere presence" it read in the original charge earlier the same day. We are satisfied the court's final accomplice liability jury instruction was correct and not confusing. The court expressly instructed the jury on the concept of "mere presence" in the original charge. It was not reversible error for the court to refer back to that earlier instruction when giving the remedial instruction later the same day. In addition, the written instructions provided to the jury before they resumed deliberations on May 10 contained the "mere presence" section. Defendant does not contend the final written instructions provided to the jury were incorrect.

Moreover, there was no plain error. There is no dispute defendant forcefully struck B.S. in the head from behind with a closed fist and knocked him against the door and to the ground. Defendant admitted those facts when he testified and the jury saw it on the surveillance video.

The question was the extent to which defendant caused B.S.'s injuries and whether he caused or attempted to cause "serious" bodily injury. Defendant did not have a meritorious argument that he was merely present at or near the scene of the crime. Considering the overall strength of the State's case, including the

16

surveillance video and defendant's testimony, there is no basis to find an error "clearly capable of producing an unjust result." R. 2:10-2.

IV.

Defendant argues resentencing is necessary because the court erred in finding aggravating factor nine, the court did not adequately weigh the aggravating and mitigating factors, and a downgraded sentence was warranted. We are not convinced.

Our "standard of review of a sentencing decision is well-established and deferential." State v. Vanderee, 476 N.J. Super. 214, 235 (App. Div. 2023), certif. denied, 255 N.J. 506 (2023). We review a trial court's sentencing decision under an abuse of-discretion standard. State v. Konecny, 250 N.J. 321, 334 (2022). "We 'must not substitute [our] judgment for that of the sentencing court.'" Vanderee, 476 N.J. Super. at 235 (alteration in original) (quoting State v. Liepe, 239 N.J. 359, 370 (2019)).

We will affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial

conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

In determining a sentence for imprisonment, the sentencing judge must consider the aggravating factors delineated in N.J.S.A. 2C:44-1(a)(1)-(15) and the mitigating factors in N.J.S.A. 2C:44-1(b)(1)-(14). "[A] trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989). Where mitigating factors "are amply based in the record . . . , they must be found." State v. Dalziel, 182 N.J. 494, 504 (2005). "[A]n appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record." O'Donnell, 117 N.J. at 216.

Defendant's claim that the court erred in finding aggravating factor nine lacks merit. Aggravating factor nine considers "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). It "incorporates two interrelated but distinguishable concepts." State v. Fuentes, 217 N.J. 57, 79 (2014) (internal quotation marks omitted). They are: (1) "the

sentence's general deterrent effect on the public"; and (2) "its personal deterrent effect on the defendant." Ibid.

The court found aggravating factor nine applied based on the nature of defendant's conduct and the serious injuries sustained by B.S. as a result. The court's finding that mitigating factor nine applied because it determined his "character and attitude . . . indicate[d] [he was] unlikely to commit another offense," does not completely negate the need for specific deterrence and certainly does not obviate the need for general deterrence. The court properly found aggravating factor nine applied based on the facts and circumstances of this case.

Defendant's remaining sentencing arguments lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). There is no reason for us to conclude the court misapplied its discretion by finding the mitigating factors did not substantially outweigh the aggravating factors. The court adequately explained the basis for its findings of the aggravating and mitigating factors and how it weighed those factors.

There is also no reason for us to find the court improperly rejected defendant's request for a downgraded sentence. A downgrade is only permitted if the court is "clearly convinced that the mitigating factors substantially

outweigh the aggravating factors and where the interest of justice demands." N.J.S.A. 2C:44-1(f)(2). Here, the court was not so convinced and as discussed previously, we will not disturb the court's determination. Defendant's claim that the "interest of justice demands" a downgraded sentence because K.W. received a lesser sentence is not convincing. K.W. was sentenced as a juvenile offender.

V.

We are not convinced by defendant's claim that remand for a restitution hearing is necessary for two reasons. First, defendant expressly declined the court's offer to conduct a restitution hearing and affirmatively stated he had no objection to the restitution award. Although defendant initially objected to the amount of the State's demand for restitution, after the court considered his arguments, reduced the award to $10,000 based on those arguments, and offered to conduct a restitution hearing if one was requested, defendant advised the court he had "had no issue with the restitution." In fact, defendant expressly requested the court apply mitigating factor six because he would be compensating B.S. for his injuries by paying restitution.

"For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" State v.

20

<u>Witt</u>, 223 N.J. 409, 419 (2015) (quoting <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009) (quoting <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973))). Trial errors that "were induced, encouraged[,] or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." <u>State v. A.R.</u>, 213 N.J. 542, 561 (2013) (citation omitted).

At sentencing, defendant expressly stated he had no objection to the court's restitution award and declined the court's offer to conduct a restitution hearing. Defendant should not now be heard to complain that the court improperly determined the amount of the award and failed to conduct a restitution hearing.

Second, even if the argument was not waived, we would not disturb the court's restitution award. It is well-settled that restitution may be ordered as part of a sentence for a criminal offense. N.J.S.A. 2C:43-3; <u>State v. Rhoda</u>, 206 N.J. Super. 584, 591 (App. Div. 1986). In order to impose restitution: (1) "a factual basis must exist" and (2) "there must be an explicit consideration of the defendant's ability to pay." <u>State v. Scribner</u>, 298 N.J. Super. 366, 372 (App. Div. 1997) (quoting <u>State v. Corpi</u>, 297 N.J. Super. 86, 93 (App. Div. 1997)); <u>see also</u> N.J.S.A. 2C:44-2(c)(2). The State carries the burden to establish the amount of loss "the satisfaction of the court" by a preponderance of the evidence.

21

State v. Martinez, 392 N.J. Super. 307, 319 (App. Div. 2007) (citing N.J.S.A. 2C:1-13(d)(1-2)). The sentencing judge has considerable discretion when evaluating a defendant's future ability to pay restitution. Id. at 371.

Defendant's claim that the State failed to establish the victim's actual loss lacks merit. Defendant does not dispute the VCCO's claim for reimbursement in the amount of $25,000, or that the VCCO is entitled to recover that amount. Indeed, defendant conceded that point at sentencing. To establish B.S.'s out-of-pocket expenses, the State provided a proposed treatment plan from Broadway Dental Arts for his uninsured dental work, which was signed by B.S. authorizing the work described. Although that document was only a proposal, B.S. testified that the work was performed and he "had all his teeth replaced." Considering all the evidence provided, it was not an abuse of discretion for the court to find the State established actual loss by a preponderance of the evidence.

Defendant's claim that the court failed to properly assess defendant's ability to pay is incorrect. The court explained it was substantially reducing the restitution award based on defendant's incarceration and youth because there was "no reasonable chance" he could pay even the $25,000 owed to the VCCO. However, it determined defendant will have many years to be gainfully employed after his release and would be able to pay $10,000 in restitution. The

22

court did not abuse its considerable discretion in evaluating defendant's future ability to pay restitution.

To the extent we have not considered any of defendant's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division